ROBERT L. FLEMING, Respondent, v. ST. LOUIS &
SAN FRANCISCO RAILROAD COMPANY, De-
fendant, KANSAS CITY SUBURBAN BELT RAIL-
ROAD COMPANY, Appellant.

**Kansas City Court of Appeals, May 6, 1901.**

1. **Railroads:** BELT LINE: SWITCHING TRAINS: COMMON CAR-
RIERS: NEGLIGENCE. A belt line switching whole trains on its
own line from a given station to stock yards is doing more than a
mere switching business; and is a common carrier amenable to rules
governing common carriers, and must be held to the same diligence.

2. ———: NEGLIGENCE: DOUBLE TRACK: HEADLIGHT. A belt
line with north and south bound tracks that backs a train north
over the south-bound track without a headlight on the caboose, and
without usual signals for preventing danger, is guilty of gross neg-
ligence.

Vol 89 app—9

3 ———: ———: EVIDENCE: CONTRACT WITH CONNECTING
CARRIER. Where the sole issue between plaintiff and the appel-
lant railroad is one of negligence, while a contract between appel-
lant and its co-defendant, a connecting railroad, relating to their
relative obligations to one another may be immaterial, yet, under
the facts in this cause it is harmless.

4. Negligence: INSTRUCTION: SINGLING OUT AND COMMENT-
ING UPON FACTS. An instruction summarized in the opinion does
not single out particular allegations of the petition and give them
undue prominence, but merely submits the facts necessary for plain-
tiff's recovery.

5. Damages: PERSONAL INJURY: INSTRUCTION: MEDICAL
SERVICES. An instruction on the measure of damages, confined the
recovery for medical services to reasonable sums of money expended
or incurred in endeavoring to be healed, and is approved.

6. ———: EXCESSIVE: OLD AGE. A verdict in favor of a man
seventy years of age for two thousand dollars is held not excessive
by reason of age, since he is entitled to the fair use of his limbs with-
out pain the remainder of his life; and may recover for the aggra-
vation of natural infirmities.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,*
Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1)   The testimony of witness Hughes, as to the proper
manner, order, signals or anything of that kind on the caboose,
under the rules and regulations of regular train service, ought
to have been excluded.   Defendant Belt company runs no
regular trains but does only a switching or transfer business.
Greenl. on Ev. (15 Ed.), secs. 50, 52; Rice on Ev. pp. 492
et seq.   (2) The case was submitted to the jury on the ground
of negligence in failing to use reasonable care in moving the
caboose and cars.   The contract between the Belt company

and the Osceola company had no bearing whatever on this issue, and on account of provisions in said contract its admission was prejudicial against defendant, Belt company. Greenl. on Ev. (15 Ed.), secs. 50, 52; Rice on Ev., pp. 492 et seq. (3)   The harmfulness of the admission of such testimony is shown by the resulting excessive verdict against the defendant Belt company. Fremont Etc. Co. v. Leslie, 59 N. W. Rep. (Neb.) 559; Kennedy v. Railroad, 60 N. W. Rep. (Minn.) 810; City of La Salle v. Wright, 56 Ill. App. 294; Railroad v. Banks (Ky.), 33 S. W. Rep. 627.   (4)   The instruction given for plaintiff as to the measure of damages did not limit the amount to be recovered for medical expenses to the reasonable value of the services rendered, and ignored the question as to whether such services and expenses were reasonably necessary.   This was error. 3 Sutherland on Damages, 720; Hart v. Railroad, 10 L. R. A. (So. c.), 794; Hewitt v. Eisenbach, 55 N. W. Rep. 252, (Neb.); Railroad v. Campbell, 13 S. W. Rep. (Tex.), 19; Edmunds v. Railroad, 3 Mo. App. 603; Streett v. Laumier, 34 Mo. 469; Hawes v. Stock Yards Co., 103 Mo. 60; State ex rel. v Shobe, 23 Mo. App. 474; State ex rel. v. Gage, 52 Mo. App. 464; Orscheln v. Scott, 79 Mo. App. 534; Badgley v. St. Louis, 149 Mo. 122.   (5)   Instruction number 1, given at request of plaintiff, was a comment on the evidence.   It singled out particular allegations of the petition and gave them undue prominence.   There was no evidence upon which to base parts of that instruction.   The jury was thereby misdirected and authorized to return a verdict not warranted by the evidence.   This constitutes reversible error.   McAtee v. Valandingham, 75 Mo. App. 45; Stokes v. Distillery Co., 64 Mo. App. 420; Copp v. Hardy, Adm'r, 32 Mo. App. 588; State v. Fairlamb, 121 Mo. 137; Chouquette v. Barada, 28 Mo. 491; Bertram v. Railroad, 154 Mo. 639; Benjamin v. Railroad, 50 Mo. App. 602; Noyes v.

Cunningham, 51 Mo. App. 194; Barr v. City of Kansas, 105 Mo. 550; Kendig v. Railroad, 79 Mo. 207; Judd v. Railroad, 23 Mo. App. 56; Railroad v. Stock Yards, 120 Mo. 541.

*Rechow & Pufahl* for respondent.

(1) The appellant complains of the action of the court in admitting certain testimony of witness Hughes. It seems to us that appellant misconceives the trend of the evidence. It was sought to ascertain from witness the proper management of a train operated like the one in question was being operated. In this there was no error. (2) Complaint is also made of the instructions. Those given for the plaintiff are absolutely fair, but the court also gave instructions five, six and seven asked by defendant. These were more favorable to defendant than it was entitled to. (3) The principal complaint, however, seems to be that the verdict is excessive. Instead of being excessive it seems to us to be inadequate to compensate the plaintiff for his injuries and suffering produced therefrom. The court will interfere with the jury's findings only in extreme cases. Hollenbeck v. Railroad, 141 Mo. 112; Williams v. Railroad, 123 Mo. 586; Drain v. Railroad, 86 Mo. 583; Haniford v. City of Kansas, 103 Mo. 183; Brown v. Railroad, 99 Mo. 319; Honeycutt v. Railroad, 40 Mo. App. 679; Rodney v. Railroad, 127 Mo. 691; Fullerton v. Fordyce, 144 Mo. 533.

BROADDUS, J.—This is a suit for personal injury. Plaintiff's cause of action is substantially as follows: On the eighth day of December, 1898, he shipped about one hundred and fourteen head of cattle and about eighty-six head of hogs to Kansas City, Missouri; that the defendant, The St. Louis and San Francisco Railroad Company, took charge of said ani-

mals at Flemington, Missouri, and agreed to deliver them and the men in charge of them safely at the Kansas City stock yards; that plaintiff was one of the persons in charge of the stock that was so shipped; that upon arriving within several miles of his destination at about 3 o'clock of the morning of December 9, 1898, the agents and servants of the defendant, The St. Louis and San Francisco Railroad Company, and the conductor in charge of the train in which said stock was shipped from said station of Flemington, Missouri, and then in charge of said train,.directed plaintiff and his men to enter and take another caboose attached to the stock cars and train, which he said would take plaintiff and his stock to their destination; that plaintiff, at the instance and request of said servants and said conductor, did enter said caboose as directed to do, and which was so pointed out to him by said servants; that at the time he had no knowledge that the tracks and the line of railroad on which said caboose and stock cars then stood, and were afterwards run along, did not belong to the said defendant last aforesaid, or that they were not in charge of its agents and servants and employees, but plaintiff alleges the fact to be that the same belonged to and was the property of the defendant, the Kansas City and Suburban Belt Railroad Company, and was in charge of its agents; and that there existed between the two defendant companies an arrangement which permitted the former company to use the tracks and roadbed of the latter company, or else the former company agreed to haul the cars and transfer the stock and persons transported by said former company from a certain station to said stock yards.

As grounds of negligence, plaintiff alleges: That said cars were not on the right track where they should have been; that in running said train of cars, the engine instead of being placed at the head of the train was placed at the back end, and pushed the train along instead of pulling it so that the engineer

could not see any other approaching train which might be coming or any other obstruction or danger on the track along which said train was moving; that said caboose was carelessly and negligently placed at the head of said train and had no signal lights or lanterns attached to warn persons or trainmen; that no person was stationed on said caboose to keep a lookout for danger from approaching trains; that while said train of cars and caboose in which plaintiff was seated was so carelessly and negligently being operated as aforesaid, the Kansas City and Suburban Belt Railroad Company, operating a train of cars coming from the opposite direction on the same track, carelessly and violently ran into and collided with the caboose in which the plaintiff was seated; and wrecked the same, and violently threw the plaintiff against a hot stove and upon the floor of the caboose, whereby he was greatly injured, etc. He then alleges the manner of his injuries and asks for $10,000 damages.

The Suburban Railroad answers by a general denial. The defendant, the St. Louis and San Francisco Railroad Company, after admitting its incorporation, sets up special matters of defense, but as the finding below was for that company its answer is not material here, as the plaintiff did not appeal therefrom. There was no dispute but what the stock of plaintiff was shipped at the time and place as stated in plaintiff's petition.

In support of plaintiff's case a contract was offered and read in evidence, against the objections of the appellant, between the Kansas City, Osceola and Southwestern Railway Company and the Kansas City Suburban Belt and the Union Terminal Railway Company, which contract, among other stipulations, contains the following: "The Belt company shall be liable for any damages to equipment, persons or property, which shall occur on account of the negligence of any of

its employees while performing any service agreed to be performed under the provisions of this contract, or by reason of any defect in the construction or maintenance of any of the tracks or facilities agreed to be furnished under the provisions of this contract, or by reason of the failure of crossing watchmen, or any other employee, to protect trains of the said Osceola company while on the property of the party of the first part, or either of them, whether such trains are being moved by the employees of the Belt company or by the Osceola company; and the Belt company· hereby agrees to hold harmless and indemnify the Osceola company from any liability for damages resulting from any of the causes aforesaid; and the Osceola company shall be liable for any damages to the equipment, property or persons, caused by negligence or fault of its employees aforesaid, and agrees to indemnify and hold harmless the Belt company on account of liability for any damages resulting from such default or negligence." Plaintiff further introduced in evidence a contract between the Kansas City, Osceola and Southern Railway Company and the St. Louis and San Francisco Railroad company, by the terms of which the latter became the successor to all the benefits and liabilities of said contract between the said Osceola Railroad Company and the appellant.

It appears from the testimony in the case that when plaintiff and his stock arrived at what was called Knoche Junction, near or in Kansas City, the cars with the stock and caboose, in which plaintiff was being transported, were taken in charge by the agents and employees of the appellant for the purpose of hauling them to the Kansas City stock yards, and while en route the collision occurred in which plaintiff was injured. Between three and five o'clock of the morning of the day named, according to the evidence of George L. Hughes, who was switching for the appellant, the appellant's agent took

charge of the stock train and caboose aforesaid, and shoved them on the south-bound main-line track, with the caboose ahead, on account of the north-bound track being blocked with cars, with the intention of crossing into the north bound track at Creston, about half a mile. A road engine backing up was met and there was a collision. He says that there was no headlight on the caboose and that switch cars only carry white lights, signal lights and hand lamps to give signals if they wanted to go ahead or back up.

The appellant makes the following assignment of errors:

"1. The court erred in admitting, against defendant's objections, evidence in regard to the rules and regulations of regular train service. 2. The court erred in admitting against defendant's objections, the contract between the Belt company and the Osceola company. 3. The court erred in giving instructions one and two, and each of them, at the request of the plaintiff. 4. That the court erred in overruling defendant's motion for a new trial."

It is claimed that "the testimony of witness as to the proper manner, order, signals or anything of that kind on the caboose, under the rules and regulations of regular train service, ought to have been excluded." The reason given why it should have been excluded is, that the appellant runs no regular trains but only does a switching business. The evidence does not show how far it was from Knoche to the Kansas City stock yards, but it does disclose that it was more than one-half mile, and that the appellant's railroad was the connecting line for the St. Louis and San Francisco railroad from said station of Knoche to said stock yards. The assumption, therefore, that the appellant only does a switching business is not shown by the facts. On the contrary, the contract read in evidence proves that its business was to receive at a particular station and deliver at said stock yards, and it is proved that it does

Fleming v. K. C. & S. B. Ry. Co.

this business over its own tracks. Its business is in every sense that of a common carrier operating a separate line of its own, and therefore amenable to the rules ordinarily governing common carriers, and must be held to the same degree of diligence.

And the facts in this case show that it was operating two tracks, one known as the "north-bound" and the other as the "south-bound," and that as this train was north-bound, its usual and safe course would have been over the north-bound track. However, as this track was blockaded by freight cars, it was sent over the south-bound track. It was therefore the grossest negligence upon the part of the appellant's agent to move said train with the caboose in advance without the usual signals to prevent danger. The appellant's train seems to have been engaged in its usual business and was, therefore, a regular train, and subject to the rules governing such for the safety of persons and property. The witness stated that they did not carry any headlight on the caboose and switch cars; only carried white lights, signal lights and hand lamps to give signals if the train was to go ahead or back up. The witness had the idea that the appellant's train was only a switch train, but, as we have seen, it was a regular railroad, acting as a connecting line with at least one other railroad. It makes no difference what its business may be called, the fact that it is a railroad is not altered thereby. Even if its business may properly be termed a "switching business," it would not be exonerated from those precautions for safety that are usually employed by railroads doing that kind of business. We have yet to learn that railroad companies use less caution while operating their trains on switches than at other places, and if such be the fact, it is none too soon for the courts to condemn such practice. And from all the testimony it is very evident that the appellant's agents neglected the most ordinary precaution in

the darkness of night, with its caboose in front, containing passengers, by not having the necessary and usual lights and without exercising that care and prudence that an ordinarily careful person would have exercised under the circumstances. The action of the agents of the appellant approached very near the boundary line that distinguishes negligence from criminal carelessness.

As the case was submitted to the jury on the ground of negligence, alone, in failing to use reasonable care in moving the cars and caboose, it is contended that the contract between the Belt company and the Osceola company had no bearing on the case, and it tended to the prejudice of the appellant before the jury. It is true that the case was tried upon the theory of appellant's negligence, and the contract could have nothing to do with that issue, but we can not see how that could have prejudiced the jury against the appellant. Because immaterial testimony has been admitted in the trial of a cause is not of itself a sufficient ground for setting aside the verdict of a jury. The claim is made here that the appellant was prejudiced thereby, but this claim is not fortified by any good reason. What effect could it have had with the jury whether the appellant received the cars on which the plaintiff and his cattle and hogs had embarked in the usual course of business as a connecting line, or under a contract to do so? Men's minds are not influenced by any such considerations. To hold otherwise would be to overturn the presumption of the law that jurors are intelligent and rational beings. There is no foundation for such a conclusion, either in reason or experience. It was a harmless error at most.

Objections are made to instruction number one given for plaintiff, in that "it singled out particular allegations of the petition and gave them undue prominence." This objection is not well founded. The instruction merely mentioned what

facts the plaintiff was required to prove before he could re-
cover. It was in that respect only stating the issue. It sub-
stantially directed the jury that if they believed that the ap-
pellant, after receiving and undertaking to transport plaintiff
and his stock from said Knoche station to the said stock yards,
did on the early morning of December 9, 1898, and while it
was yet dark, if it was dark, start on and along its south track
a train of cars containing said stock, and that plaintiff accom-
panied said stock and was received and placed by appellant,
its servants and agents, in front of said train, and was pushed
along by appellant's engines and train of cars on and along the
south track of appellant's railroad without a light or any person
on the front end of said caboose, to avoid collision, they, the
jury, would be authorized to find for the plaintiff if they be-
lieved such conduct was not that of an ordinarily prudent per-
son under similar circumstances. Now these were the facts in is-
sue, and before the plaintiff could recover he must prove them.
There was no undue prominence given to them. They be-
came and were the essential facts—the life of the cause. How
was the jury to know what facts they must find in order that
plaintiff might sustain his action, unless they were told? The
instruction is neither in form or substance in the nature of a
commentary on the evidence. Nor does it call attention to
any fact, as claimed, about which there was no evidence. It
is proper for the court to instruct upon the pleadings and the
evidence in the case. This is a rule that can not be denied.

Objection is made to plaintiff's instruction as to the meas-
ure of damages, in that it "did not limit the amount to be re-
covered for medical expenses to the reasonable value of the ser-
vices rendered, and ignored the question as to whether such
services and expense were reasonably necessary." The lan-
guage of the instruction is: "And, also, all reasonable sums
of money, if any, expended or incurred by plaintiff for the

services of doctors in endeavoring to be healed of his said injuries." The meaning of which is, that the sums paid out for doctors must be reasonable for the services rendered, and that the services were rendered in the endeavor to heal him of his injuries. In other words, the money must have been expended for services rendered in the effort to heal his injuries; that is, reasonably expended. The appellant's counsel are more than critical.

The last contention of the appellant is that the damages —$2,000—were excessive and not supported by the evidence. There was quite a conflict in the evidence on this question and as usual the doctors disagreed. The plaintiff was injured in the right arm and shoulder. The plaintiff's evidence tends to show that the injury is permanent and that the arm has shrunk from its usual size, and that he constantly suffers from his injury. He is about seventy years of age and as his locomotion remained unimpaired he continued to attend to his usual business, which he might well do notwithstanding his arm may have been permanently injured. On the other hand, defendant's witnesses—doctors—testified that his injuries were slight. The jury passed upon all the testimony and found that plaintiff was injured, no doubt seriously, from the amount of their verdict, and it is not for this court to set aside the verdict unless it appears from all the testimony that the verdict was excessive. It is true, the plaintiff is an old man, but that fact does not militate against his right to compensatory damages for his injuries. He is justly entitled to the free use of his limbs without pain and suffering the remainder of his life. And if the natural infirmities of age have been aggravated by the wrong he has suffered, it is no answer to his claim for damages to tell him he is old and is near the end of his race. And while this fact perhaps ought not to entitle him to more damages. than a young man, it certainly, in this kind of case, is not an argu-

ment for lessening his real loss. The matter is not to be measured by the same rule as would be applied to an old horse turned upon the common to starve, because of his want of value.

As we find no error in the trial that could have prejudiced the appellant, the cause is affirmed. All concur.