ARCHIE ROBERTS, Administrator, v. CONSOLIDATED PAVING & MATERIAL COMPANY, a Corporation, Appellant.—70 S. W. (2d) 543.

Division One, April 19, 1934.

*Culver & Phillip* for appellant.

8

*Randolph & Randolph* for respondent.

GANTT, J.—Action by the administrator of the estate of Virgil Roberts to recover for his death, which was caused by the collision of a Chevrolet sedan with a two and one-half ton steel motor truck filled with concrete. The collision occurred at the intersection of Sixth and Monterey Streets in St. Joseph at noontime on December 17, 1930. The Chevrolet was driven by Roberts. Judgment for $10,000 and defendant appealed.

The petition charged negligence as follows: (1) dangerous rate of speed of the truck; (2) negligently driving the truck on the east side of Sixth Street; (3) negligent failure of the truck to yield the right of way to the Chevrolet; (4) violation of the humanitarian rule by negligently failing to stop or slacken the speed or swerve and thereby avoid the collision.

The answer was a general denial with a plea of contributory negligence.

At the close of the case defendant tendered its demurrers to the evidence, contending that plaintiff failed to make a case of actionable negligence. The demurrers were overruled. The case was submitted to the jury on all the charges of primary negligence and the charge of negligence under the humanitarian rule.

I. Defendant contends that deceased was guilty of contributory negligence as a matter of law, and for that reason cannot recover on the charges of primary negligence.

On behalf of planitiff, there was evidence as follows:

Monterey Street runs east and west and intersects Sixth Street running north and south. At the intersection Monterey does not run directly east through Sixth Street. The west intersection of Monterey with Sixth is fifty-two feet south of the east intersection of said

streets. One traveling on Monterey from a point west of Sixth to a point on Monterey east of Sixth moves eastward through the intersection to the east side of Sixth, then north about fifty-two feet to the eastern intersection of Monterey and Sixth. The traffic is heavy on Sixth. It is the main thoroughfare between the northern and southern districts of the city. The sidewalks on each side of said street are twelve feet wide, and the street is thirty-six feet wide between the sidewalks. In the center of the street are two car tracks. It is ten feet from the west curb of Sixth to the west rail of the west track, six feet between the two tracks, and four feet eight and one-half inches between the rails of each track. Monterey, west of Sixth, is eighteen feet wide between the curbs at the intersection. The sidewalks on said street are six feet wide. At the northwest corner of the intersection there is a two-story brick building joining the sidewalks on the west side of Sixth and the north side of Monterey. At the southwest corner of the intersection and in Monterey Street there is a stop sign against eastbound travelers on Monterey. There is not much traffic on said street. The vehicular part of the intersection is eighteen by thirty-six feet. On said day the deceased drove the Chevrolet east on Monterey to Sixth. He stopped, with the front wheels of the Chevrolet even with the west curb of Sixth. He then had an unobstructed view of Sixth to the north. He shifted the gear to second, "looked up and down Sixth," and then proceeded in a northeasterly direction about twenty feet, when the Chevrolet collided with the motor truck which was traveling south on Sixth at thirty miles an hour astride the east rail of the west track. The Chevrolet at the time and just before the collision was moving at eight or ten miles an hour and could have been stopped within from one foot to three feet. As the Chevrolet came into the vehicular part of the intersection, the truck was swerved to the southeast and the Chevrolet was swerved to the south. Instantly the collision occurred near the north curb line of Monterey and the west rail of the east track. The left fender and left front wheel of the Chevrolet struck the truck at or near its cab. The sides of the cars then came together, the left door of the Chevrolet opened, and Roberts fell from the Chevrolet and in front of a wheel of the truck, which passed over him, thereby causing his death. On the sides of the cars coming together, the Chevrolet moved southwest and the truck continued southeast. The Chevrolet stopped about twenty-five feet from the curb on Monterey and the truck stopped about seventy-five feet south of the Chevrolet. After the collision tire marks of the truck wheels were on the pavement. The marks started near the north line of Monterey and between the east rail of the west track and the west rail of the east track and continued to the southeast.

On behalf of the defendant there was evidence as follows:

■ The truck was driven south on Sixth Street astride the west rail of the west track at twenty miles an hour. The driver of the truck saw a fender or wheel of the Chevrolet emerging from behind the brick building at the northwest corner of the intersection when the truck was about fifty feet from the north curb line of Monterey. At that time the front end of the Chevrolet was about twenty-five feet from the vehicular part of the intersection. The driver of the truck knew of the stop sign in Monterey and thought the Chevrolet would stop. It did not stop but proceeded in a northeasterly direction at fifteen to twenty miles an hour into the vehicular part of the intersection and so continued until the collision. On a test made by defendant at or near said intersection, the same truck similarly loaded and moving twenty miles an hour was stopped in forty-seven feet. This is the only evidence on the question. The truck wheel did not run over deceased. The brakes had been applied and the wheel "slid" over him.

The contention of defendant is sustained. If deceased drove the Chevrolet into the vehicular part of the intersection at fifteen to twenty miles an hour without stopping and without looking for cars traveling on Sixth Street, he was guilty of negligence as a matter of law.

Furthermore, if, while so traveling, he looked to the north in Sixth Street before entering said part of the intersection, he must have seen the truck approaching at a speed of twenty to thirty miles an hour and near the intersection. If so, he was guilty of negligence as a matter of law in causing the Chevrolet to proceed in a northeasterly direction and toward the fast moving truck, which was only about twenty feet from the west curb line of Sixth.

If, as testified by Mr. Wilson (who was a guest in the Chevrolet) deceased stopped the Chevrolet before entering the vehicular part of the intersection and "looked up and down Sixth," he must have seen the truck approaching at said speed and near the intersection. If so, he was guilty of negligence as a matter of law in causing the Chevrolet to proceed in said direction and toward the fast moving truck which was said distance from the west curb line of Sixth.

■ II. Defendant next contends that the evidence does not make a case for plaintiff under the humanitarian rule.

There is no evidence in the record locating the truck at the time the Chevrolet reached Sixth Street. However, the evidence conclusively shows that at the time the Chevrolet moved into the vehicular part of the intersection, the truck was near the north curb line of Monterey.

If the Chevrolet was stopped before entering said part of the intersection, the deceased was not then ·in peril and the truck was authorized to continue southward. If the Chevrolet was not so stopped, the driver of the truck could not be charged with knowledge

of the peril until the movement of the Chevrolet indicated that it might continue eastward into said part of the intersection. The peril was not so indicated until the Chevrolet was about to enter said part of Sixth Street. At that time the driver of the truck saw the Chevrolet within twenty feet and moving in a northeasterly direction and toward the truck. A collision could not have been avoided. On noting said movement of the Chevrolet, the driver of the truck swerved to the east and almost instantly the collision occurred near the north curb line of Monterey Street and between the tracks. It is clear that, on the peril arising, the driver of the truck did all within his power to avoid the collision. In this connection it may be stated that the marks on the pavement tend to show that the truck brakes were applied when the truck was near the north curb line of Monterey.

The distance the truck moved after the collision is not material, for it conclusively appears that at the time the peril arose the driver of the truck made every possible effort to avoid the collision.

The judgment should be reversed. It is so ordered. All concur, except *Hays, J.,* absent.