**Golda Mae OSBORN, Appellant,**

v.

**Tom McBRIDE, Jr., Respondent.**

**No. 51480.**

Supreme Court of Missouri,
Division No. 2.

Feb. 14, 1966.

Motion for Rehearing or for Transfer to Court En Banc Denied March 14, 1966.

**186**

Donnelly & Donnelly, by Robert T. Donnelly, Lebanon, Morgan M. Moulder, Camdenton, for appellant.

Gerald H. Lowther, James K. Prewitt, Henry W. Westbrooke, Jr., Miller, Fairman, Sanford, Carr & Lowther, Springfield, for respondent.

FINCH, Judge.

This is an appeal by plaintiff from an adverse judgment entered following a jury verdict for defendant in a suit wherein plaintiff sought recovery of $50,000.

The issues raised by plaintiff on appeal are that the trial court erred in denying permission, following the voir dire examination, for plaintiff to amend her petition to allege violation of a speed ordinance of the City of Lebanon, and erred in the giving and refusing of instructions. Defendant asserts that any alleged trial errors are immaterial on the basis that plaintiff failed to make a submissible case, and a verdict for defendant should have been directed.

This suit arises out of a collision which occurred May 25, 1963, at approximately 12:30 p. m., at the intersection of Jefferson and Sixth Streets in Lebanon, Missouri. State Highway No. 5 follows Sixth Street in a westerly direction until it intersects with Jefferson Street, which also is State Highway No. 64. Sixth Street is 40 feet 4 inches wide at its intersection with Jefferson. Jefferson Street is 40 feet wide at the south side of the intersection, changing to 22 feet in width north of the intersection. An electric amber blinking caution light was suspended overhead at the center of the intersection and a stationary metal stop sign was posted for westbound traffic on Sixth Street at the northeast corner of the intersection. A similar stop sign for traffic traveling east on Sixth Street and entering the intersection was posted on Sixth Street at the southwest corner of the intersection.

Plaintiff was riding with her husband in the right front seat of their jointly owned 1956 Chevrolet as they drove westwardly on Sixth Street approaching the intersection

with Jefferson Street. They had come from Camdenton to Lebanon on a shopping trip. With reference to the collision, plaintiff testified as follows: The Osborn car was traveling 5 to 10 miles per hour as it approached the intersection. The car stopped at the stop sign within 5 feet of the east edge of Jefferson Street. Both plaintiff and her husband (deceased at the time of trial) looked both to the right and to the left on Jefferson before proceeding into the intersection. At that time it was misting and the pavement was wet but not slick. Plaintiff did not see any car approaching from the south on Jefferson Street. She estimated she could see a block to the south on Jefferson. Plaintiff's husband started across the intersection and started to turn left and was over half way across the center of the intersection when their car was hit on the left side by a car driven by defendant. Plaintiff first saw defendant's automobile when it was not more than 15 to 25 feet away and "it was going all of 25, I would say, and it seemed to me like more than that, we go an awful lick." Defendant swerved to his left and his car was close to the middle of Jefferson when it struck the left side of the Osborn car, pushing it sideways toward the northwest corner of the intersection.

Sons of plaintiff, based on visits to the scene during the afternoon of the day of the collision, placed broken glass and debris on the intersection from about 1½ feet east of the center line of Jefferson to a point 6 or 7 feet west of the center line, and told of skid marks of a car going sideways, extending 18 to 20 feet toward the northwest corner of the intersection. One son stated that the left side of the Osborn car was mashed in almost a foot and the frame was bent.

One of plaintiff's sons told of a conversation at the hospital on the following afternoon with defendant wherein the latter said he saw Osborn pulling into the intersection, whereupon defendant cut to the left, thinking Osborn would stop, but he kept on coming and they collided. The son testified that defendant further stated that had he cut to the rear of Osborn and to the right side of Jefferson, he either would have missed Osborn or there would have been a scraping of the fenders.

Defendant testified as follows: He was going not more than 25 miles per hour as he drove north on Jefferson toward the intersection with Sixth Street. It was raining sufficiently that he had his windshield wipers on and the pavement was wet and slick. He first saw the Osborn car when he was 65 to 70 feet south of the intersection. At that time Osborn was going 5 to 10 miles per hour and decreasing his speed as he approached the intersection. He either came to a complete stop or was barely rolling. Defendant then looked to the west side of the intersection, where another car was stopped, and he then glanced back and saw the Osborn car proceeding into the intersection in front of him. At that time the Osborn car was 35 to 40 feet away. Defendant immediately hit his brakes and tried to cut his wheels to the left to miss Osborn. His tires slid and the car did not slow very much. He swerved not over 2 feet and he hit the Osborn car broadside, a little bit more to the front than to the rear of the car. The left front of defendant's car was just about at the center line at the time of impact and at that time the front of the Osborn car was over the center line perhaps 2 feet. The impact pushed the Osborn car 4 to 6 feet sideways toward the northwest corner of the intersection.

A photographer testified that one could see south on Jefferson a distance of 1560 feet from a point 25 feet east of the east edge of the intersection, and could see further south when closer to the intersection. He gave the length of the first block south of the intersection as 480 feet. Defendant testified that at the east edge of the intersection one could see four or five blocks south on Jefferson.

An employee at a filling station located at the southeast corner of the intersection,

Jack Glendenning, testified that he was watching at the time of the collision; that the Osborn car did not make a complete stop at the stop sign; that when Osborn pulled on out into the intersection the defendant's car was coming north on Jefferson at 20 to 25 miles per hour; that defendant was 35 to 40 feet from the intersection when the Osborn car pulled out, and that it looked as though defendant tried to stop and was skidding possibly somewhat to the left. Another witness, Ray Vibbard, who was the driver of the second car behind Osborn as they drove west on Sixth Street, testified that defendant could not have been over 30 to 35 feet from the intersection when Osborn pulled out in front of him; that he did not believe defendant then was going over 25 miles per hour, and that he was going perhaps 10 to 12 miles per hour when he hit Osborn.

There was evidence that one and one-fourth blocks south of this intersection there was a metal 25 mile per hour sign posted on the east side of Jefferson, and that just north of the intersection on the east side of Jefferson there was a metal 35 mile per hour sign posted.

■ The rule is well established that trial errors are immaterial if plaintiff failed to make a submissible case. Hoock v. S. S. Kresge Co., Mo., 230 S.W.2d 758; Cottonwood Fibre Co. v. Thompson, 359 Mo. 1062, 225 S.W.2d 702. Our first inquiry, therefore, is whether plaintiff herein made a submissible case. This involves a determination of three questions, viz., (1) whether the evidence justified submission on primary negligence based on alleged excessive speed; (2) whether plaintiff, even if permitted to amend to plead a speed ordinance of Lebanon allegedly fixing a speed limit of 25 miles per hour at the point of collision, made a submissible case, and (3) whether plaintiff should have been permitted, under the evidence offered, to submit under the humanitarian doctrine for failure to swerve. We proceed to consider these three ques-

tions, viewing the evidence from the standpoint most favorable to plaintiff.

■ 1. This case was submitted to the jury on the primary negligence issue of alleged excessive speed in excess of 25 miles per hour. Actually, there was no evidence to establish a speed in excess of 25 miles per hour. Plaintiff's only evidence on the subject was her own testimony. Her exact words were, "It was going all of 25, I would say, and it seemed to me like more than that, we got an awful lick." It will be observed that when she was asked to fix the speed of the defendant, plaintiff said "it was going all of 25," which amounted to saying that defendant was going 25 miles per hour. She went on to say that it seemed like more since the impact was so hard, but this was merely descriptive of the effect of the impact on her, and not of a different speed. If she had been undertaking to testify that the speed actually was greater than 25 miles per hour, then she should and would have fixed the speed to which she was testifying. Her testimony is not sufficient to establish a speed greater than 25 miles per hour. For the defense, the speed was fixed at 25 miles per hour by the defendant himself, at 20 to 25 miles per hour by Glendenning, the station attendant, and at not to exceed 25 miles per hour by witness Vibbard. Thus, there was no evidence on which to submit on the theory that defendant was traveling at a speed in excess of 25 miles per hour. Furthermore, plaintiff offered no evidence that excessive speed was the proximate cause of the collision. Mere speculation or conjecture is not sufficient. Plaintiff must produce sufficient evidence from which the jury may find or reasonably infer that excessive speed was the direct and proximate cause of the collision. Bauman v. Conrad, Mo.App., 342 S.W.2d 284.

■ 2. Plaintiff's next contention is that the trial court abused its judicial discretion in denying plaintiff the right during the recess following the voir dire examina-

tion to amend her petition to allege violation of a city speed ordinance. It allegedly fixed a speed limit of 25 miles per hour on Jefferson Street where the collision occurred. Whether to permit the amendment at that time was a matter resting within the judicial discretion of the trial judge. As we said in Simpson v. Kansas City Connecting Railroad Co., Mo., 312 S.W.2d 113, 118, " 'it is settled in this state that a trial court has the discretion to permit amendments to pleadings to be made out of time before final judgment and its discretion in allowing or denying amendments will not be interfered with by the appellate courts unless the trial court has palpably abused its discretion.' " We find nothing in this record to justify a holding that the trial court abused its discretion.

◼ We observe further that permitting plaintiff to have so amended would have availed her nothing. There was no evidence to show a speed in excess of the alleged limit of 25 miles per hour, and hence no evidence to show a violation of the ordinance. Even if the evidence could be construed to be sufficient to submit that issue, the plaintiff offered no evidence of causation, and it may not be inferred. There is no presumption that violation of a speed ordinance is the proximate cause of an ensuing collision. Hinds v. Kircher, Mo., 379 S.W.2d 607; Bauman v. Conrad, Mo. App., 342 S.W.2d 284.

3. Plaintiff asserts error in the denial of her Instruction "A" wherein she sought to submit under the humanitarian doctrine on the basis of a failure of defendant to swerve and avoid the collision. We are of the opinion that there is no merit in this contention. What we said in Branscum v. Glaser, Mo., 234 S.W.2d 626, 628, is particularly appropriate: "One of the essential elements of the humanitarian rule is that 'defendant after receiving such notice (of a person's position of imminent peril) had the present ability, with the means at hand, to have averted the impending injury without

injury to himself or others'. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484. There is a total failure of proof herein as to this element. Of course, Branscum was not in peril at all while his car was stopped at the stop sign and defendant's driver was under no humanitarian duty to take any action until he started his car toward the highway."

Plaintiff testified that her husband drove up to the stop sign and stopped. Defendant said that the Osborn car either stopped or almost stopped. At the time when stopped or nearly stopped at the stop sign, the Osborn car was in a position of safety and was not then in a position of imminent peril. If the car had stayed at that point, no collision would have occurred. Davis v. Quality Oil Co., Mo., 353 S.W.2d 670. Paraphrasing language in that opinion at page 674, it is evident that plaintiff came into a position of peril at some time after she left or immediately upon leaving her position of safety which was when she was stopped or almost stopped. Absent obliviousness, which was not claimed or submitted here, "the position or danger zone of imminent peril of a person approaching the path of a moving vehicle reaches no farther beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop short of it." Yarrington v. Lininger, Mo., 327 S.W.2d 104, 110.

◼ At that time, according to the uncontradicted testimony, defendant was 35 to 40 feet away from the intersection. One-half the width of Sixth Street was another 20 feet, so that at most only 55 to 60 feet separated defendant from plaintiff when she entered the zone of imminent peril (some of the witnesses fixed a shorter total distance between the cars, but this is the maximum under distances fixed by anyone). At 25 miles per hour, the speed at which the evidence indicates defendant was traveling, he traveled 27.45 feet during reaction time of three-fourths of a second.

That left him at most a little less than 23 feet in which to swerve and miss plaintiff's car. Plaintiff introduced no evidence to show that this could have been done. Defendant testified that he cut his wheels to the left and on the wet pavement he swerved and skidded not more than 2 feet to the left, hitting plaintiff's car broadside at its left center or a little to the front of what would have been the center of that side of the car. The front fender of the Osborn car was hit by the defendant, but the back one was not. There is no basis to assume or infer that defendant could have swerved further to the right than to the left. Obviously, if defendant had swerved to the right instead of to the left and moved right 2 feet instead of left 2 feet, he still would have collided with plaintiff's automobile. A mere possibility of avoiding a collision is insufficient to make a submissible case within the humanitarian doctrine. Bauman v. Conrad, Mo.App., supra; Shaw v. Griffith, Mo.App., 291 S.W.2d 230. Defendant's statement to a son of the plaintiff the next afternoon that if he had cut to the right, he could have missed Osborn or just scraped fenders, at most, is a statement of possibility, and in the light of the physical facts as disclosed by the evidence, it was not sufficient to sustain plaintiff's burden of introducing substantial evidence tending to show that defendant had the present ability, with the means at hand, to have avoided the collision without injury to himself or others after he had notice of plaintiff's position of peril.

In view of our conclusion that plaintiff did not make a submissible case and that no error was committed in denying the right of amendment of the petition after conclusion of the voir dire examination, it would serve no useful purpose to consider the instructions to which objection was made.

The judgment is affirmed.

All of the Judges concur.