Chris E. HANSMANN, a Minor, by Doris
Floyd, his Next Friend, Plain-
tiff-Respondent,

v.

Robert RUPKEY, Defendant-Appellant.

No. 32980.

St. Louis Court of Appeals,
Missouri.

May 21, 1968.

Heneghan & Roberts, Robert G. Bur-
ridge, St. Louis, for defendant-appellant.

Murphy, Roche & Schlapprizzi, Donald
L. Schlapprizzi, St. Louis, for plaintiff-re-
spondent.

DOERNER, Commissioner.

This is an action for damages for
personal injuries sustained by a 4 year old
boy who was struck by defendant's auto-
mobile as he was attempting to cross Mc-
Ree Avenue in the City of St. Louis. De-
fendant appeals from a judgment for $4500
entered upon a jury verdict. His only con-
tention is that the court erred in over-
ruling his motion for a directed verdict
made at the close of all the evidence.
Since plaintiff's sole submission was on the
failure to keep a careful lookout our re-
view as to the sufficiency of the evidence
is limited to that ground of negligence.

Evett v. Corbin, Mo., 305 S.W.2d 469; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91; Harris v. Lane, Mo. App., 379 S.W.2d 635.

█ The jury having found for plaintiff, in determining the issue of submissibility we are required to review the evidence from a standpoint favorable to plaintiff and accord him the benefit of all inferences reasonably to be drawn therefrom, and disregard all of defendant's evidence except such as aids plaintiff's case. Murphy v. Land, Mo., 420 S.W.2d 505; Terminal Warehouses of St. Joseph v. Reiners, Mo., 371 S.W.2d 311; Christie v. Gas Service Co., Mo., 347 S.W.2d 135. So considered the following appears:

On Sunday, May 9, 1965, plaintiff, then 4 years of age, resided with his mother, since remarried, at 3821a McRee Avenue, located on the north side of that east-west street. About 1:30 P.M. plaintiff and his sister, Linda Sue, were watching their 7 year old brother, Jay, play ball with a youngster named Danny on the sidewalk in front of their home. Jay testified that he missed the ball, which rolled across to the curb on the south side of the street, and after looking for traffic, and seeing none, he crossed the street to retrieve the ball. Plaintiff followed Jay across the street. Jay stated that after picking up the ball he started back right away, as did plaintiff, who was 6 or 7 feet to his right or east of him, and that plaintiff was hit by the front grill of an automobile. Loran Rundel, who lived at 3823a McRee and who was on his front porch at the time, related that his attention was first attracted by the squealing of brakes and that he looked but couldn't see the plaintiff because defendant's car was between him and plaintiff. Rundel fixed the approximate place of the collision as even with a big tree shown on plaintiff's Exhibit 2, a photograph, and also stated that the distance between two automobiles parked on the south side of the street at the time of the occurrence was at least the distance between the two automobiles which appeared in the exhibit. He related that he immediately went to the area where plaintiff had been struck, saw plaintiff lying in the street in the path of defendant's car, and observed skid marks 20 to 25 feet long which had been made by defendant's vehicle.

Mrs. Berry, informed by Linda Sue that plaintiff had been struck by an automobile, rushed out of her house and as she did so saw a man picking up plaintiff from in front of defendant's car. She also verified the accuracy of the location and intervals between the cars as depicted in plaintiff's Exhibit 2 with those which existed at the time of the casualty. Her estimate of the distances between the cars was 50 or 60 feet. Mrs. Berry also testified that there was a parking lane and a traffic lane for both eastbound and westbound vehicles, and that the lanes were about 10 feet wide.

Defendant testified that he never saw plaintiff and that the first he knew that his automobile had struck plaintiff was when he heard a thump. He had been proceeding south on 39th Street, the intersecting street to the west, and had made a left turn onto McRee. A friend, Robert Dannenberger, occupied the front seat to his right, and Dannenberger's 3 boys and his son were in the back of defendant's 1956 Ford station wagon. He stated that he proceeded eastwardly on McRee in the approximate middle of the eastbound driving lane, at a speed of approximately 20 miles per hour, with the left side of his car about 2 or 2½ feet from the center line of the street. He gave the width of his car as about 5 feet. Defendant fixed the distance between the cars parked at the south curb as about half a car length, or 7 or 8 feet, and stated that the first thing he saw was the head of a child coming from in front of the parked automobile, running from the south towards the north. He said that he immediately slammed on his brakes and that when his car was within one or two feet of reaching a complete stop he heard the thump. According to de-

fendant, the boy whom he first saw had practically reached the north curb when he heard the thump. Both defendant and Dannenberger, who testified on his behalf, placed the site of the casualty as about in the middle of the block between 39th Street and Spring Avenue, the intersecting street to the east. Both also said that immediately prior to the collision they had been talking about an electrical problem in Dannenberger's home. Dannenberger related that immediately prior to the impact he was looking at defendant, and that the first thing of which he was aware was when he heard defendant hit the brakes. His eye caught a boy running to the north, about to step up on the north curb, and when he turned his head he saw plaintiff, already hit, skidding on the street.

 To establish a charge of negligent failure to keep a proper lookout it is incumbent upon a plaintiff to produce substantial evidence from which the jury can find that in the exercise of the highest degree of care the defendant could have seen the plaintiff in time thereafter to have taken effective precautionary action. Gousetis v. Bange, Mo., 425 S.W.2d 91; Zalle v. Underwood, Mo., 372 S.W.2d 98. Defendant's contention that plaintiff failed to carry that burden is due in large measure to his all too common failure to give plaintiff the benefit of the most favorable combination of facts which can be picked or reasonably inferred from the whole evidence, as long as such facts do not conflict with plaintiff's basic theory of the case or with his own judicial admission. Williams v. Ricklemann, Mo., 292 S.W.2d 276; Immekus v. Quigg, Mo.App., 406 S.W.2d 298; Montgomery v. Petrus, Mo.App., 307 S.W.2d 24. For example, defendant exhibits a reluctance to accept Mrs. Berry's testimony that the interval between the parked cars was 50 or 60 feet, and asserts that there was no evidence as to how far plaintiff was from the west end of the gap when the accident occurred.

 In determining the submissibility of plaintiff's case we must, of course, accept as true her testimony regarding the space between the parked cars and the accuracy of the location of such cars as depicted in plaintiff's exhibit No. 2. Price v. Seidler, Mo., 408 S.W.2d 815, 819. Plaintiff is also entitled to the benefit of Rundel's testimony that the place where plaintiff was struck was even with the tree which appears in plaintiff's Exhibit 2. The photograph shows that the distance from the tree to the front of the westernmost parked car is three-fourths of the total distance between the parked vehicles, so that if the entire spacing was 50 feet, the lesser distance estimated by Mrs. Berry, the point where plaintiff was struck was 37½ feet east of the westernmost car. According to defendant, the left side of his car was about 2 or 2½ feet south of the center line of the 40 foot wide street. So proceeding, it is readily apparent that the resulting triangulation is such that had defendant maintained the vigilant watch ahead and laterally which the law demanded of him in the exercise of the highest degree of care, Miller v. St. Louis Public Service Co., Mo., 389 S.W.2d 769; Stradford v. Bluefeather, Mo., 384 S.W.2d 541, he would have had a clear and unobstructed view of plaintiff at the south curb near the tree for a considerably greater distance than the 42 feet within which defendant asserts he stopped after seeing Jay. In the foregoing calculations we have used 50 feet as the distance between the parked cars. Of course, if 60 feet is used, the greater distance estimated by Mrs. Berry, plaintiff's case would be materially strengthened. But from either standpoint, there was sufficient competent evidence from which the jury might find that the defendant was negligent in failing to maintain a vigilant lookout and that such negligence was the proximate cause of the accident. Gousetis v. Bange, Mo., 425 S.W.2d 91; Hildreth v. Key, Mo.App., 341 S.W.2d 601.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

ANDERSON, P. J., RUDDY, J., and JAMES H. KEET, Jr., Special Judge, concur.