Ross L. BATES, Appellant,

v.

Chester Ray HENSLEY, Appellee.

No. 19350.

United States Court of Appeals Eighth Circuit.

Sept. 3, 1969.

Rehearing Denied Oct. 17, 1969.

Dayton W. Countryman, Nevada, Iowa, for appellant; Marvin Motley, Branson, Mo., was on the brief with Mr. Countryman.

Daniel T. Rabbitt, Jr., of Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, Mo., for appellee; F. X. Cleary, St. Louis, Mo., was on the brief with Mr. Rabbitt.

Before GIBSON, LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This diversity action, arising out of an automobile accident, was instituted in the United States District Court for the Western District of Missouri. The plaintiff's (Hensley's) personal injury claim against the defendant (Bates) was settled before the trial. The defendant's counterclaim was tried before a jury and a verdict of $9,000 was returned. Hensley did not appear as a witness at trial.

The District Court granted Hensley's motion for judgment notwithstanding the verdict on the grounds that Bates had failed to make a submissible case and his own evidence showed he was contributorily negligent.[1] The trial court further provided that in the event the order was reversed on appeal, Hensley should have a new trial.[2]

Bates contends on appeal that the trial court erred. He argues that the evidence demonstrates that Hensley was

---

1. The trial court stated:
   "* * * [T]he defendant wholly failed to meet the burden of proof as to the plaintiff's negligence, and that the defendant's own evidence showed that the defendant was guilty of contributory negligence as a matter of law. * * *"

2. The trial court stated:
   "In the event the appellate court reverses the above order, the plaintiff in this case shall have a new trial for the error in submitting to the jury the instruction that plaintiff could be found liable if the jury found that plaintiff drove his automobile in excess of twenty-five miles an hour, for the reason there was no evidence that plaintiff did drive in excess of twenty-five miles an hour."

negligent in driving his taxicab at an excessive rate of speed and in failing to keep a careful lookout. He also contends that he was not guilty of contributory negligence.

We are required to view the evidence in the light most favorable to Bates and to draw all legitimate inferences in his favor.[3]

"Only where there is a complete absence of probative facts to support the conclusion reached does reversible error appear. But where there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. * * *

" * * * [W]here the defendant assigns as error the court's refusal to direct a verdict for defendant, Supreme Court in considering assignment would state the evidence favorable to plaintiff and disregard defendant's evidence, unless it added to plaintiff's case. * * *" (Citations omitted.)[4]

In our opinion, there is at least one set of facts which could be reasonably inferred by the jury from the evidence presented which would allow them to find: (1) that Hensley was negligent in driving at an excessive speed; (2) that Hensley was negligent in failing to keep a careful lookout; and (3) that Bates was not contributorily negligent.

The accident occurred in the westbound traffic lane of Highway 76 within the city limits of Branson, Missouri, at approximately 9:25 A.M. on August 16, 1965. It was raining heavily at the time of the accident.

The point of impact was some five and one-half feet north of the centerline on the downward slope of a hill. There was a clear view from the point of impact to the crest. While the evidence was contradictory, that most favorable to Bates indicated that the point of impact was 255 feet from the crest.

Bates was parked on the shoulder of the highway facing west and parallel to the westbound traffic lane prior to attempting to make a left turn which would bring him across the traffic lanes perpendicularly.

Prior to commencing the turn, Bates checked for cars approaching from the rear (east) and signalled his turn. He stated that there were no cars approaching when he started to move forward. He proceeded forward six or eight feet and looked east again. He did not see any cars approaching. He then turned to look west and, about that time, his car was struck by Hensley's westbound taxicab.

Bates argues that the jury could properly infer from the physical results of the accident that the taxicab was moving at an excessive rate of speed. He suggests that it would not be improper for the jury to find that the plaintiff (Hensley) was traveling at a speed of nearly sixty miles an hour.

We have found no Missouri case permitting a jury to determine from the physical results of the accident that a car was proceeding at a particular rate of speed. Juries, however, have been permitted to find from the location of the cars after impact, the sound of the crash and the damage resulting from the collision that a car was traveling greatly in excess of a given speed. See, Payne v. Reed, 332 Mo. 343, 59 S.W.2d 43 (1932); Norris v. Winkler, 402 S.W. 2d 24 (Mo.App.1966).

Here, Bates' car ended up eighty-five feet from the point of impact and flipped over three times. It was nearly demolished and Hensley's car was severely damaged. The force of the

3. Kotula v. Ford Motor Company, 338 F.2d 732, 735 (8th Cir. 1964), cert. denied, 380 U.S. 979, 85 S.Ct. 1333, 14 L.Ed.2d 273 (1965); King v. Ellis, 359 S.W.2d 685, 687 (Mo.1962); Osterhaus v. Gladstone Hotel Corporation, 344 S.W.2d 91, 93 (Mo.1961).

4. Moore v. St. Louis Southwestern Railway Company, 301 S.W.2d 395, 398 (Mo.App. 1957).

collision rendered Bates unconscious and he received severe injuries. We think that the jury could find from these facts that Hensley was traveling at a speed greatly in excess of thirty miles an hour, the posted speed limit, and that he was negligent.

We think that the jury could also find that Hensley failed to keep a careful lookout.

Bates stated that his car never reached a speed greater than seven or eight miles an hour. At an average speed of four miles an hour, Bates' car would travel nearly six feet a second or eighteen feet in three seconds.

The highway was twenty-six feet wide with nine foot shoulders. If Bates were parked on the extreme right edge of the shoulder, then the right front end of the car would have to travel more than twenty-two feet to reach the centerline.

A witness testified that when the Bates' car began to move, it looked like it was going to make a U-turn. The jury could find that Bates' path of travel was a sharp turn to the left.

A witness testified that the elapsed time between when Bates' car began to move and the collision was just long enough for the witness to turn, go up on her porch and take off her coat. Bates' testimony indicated that the elapsed time was very brief.

We think that it would not be unreasonable for the jury to find from these facts, i. e., the time and distance, that it took approximately three to four seconds for the Bates' car to move from the stopped position to the impact position.[5]

The jury could believe Bates and find that Hensley had not come over the crest of the hill when Bates first looked back, signalled, and began to make his left turn.

The jury could reasonably find, as previously stated, that the taxicab was moving at nearly sixty miles an hour. They could also find that the point of impact was 255 feet from the crest. At sixty miles an hour, a car will travel 264 feet in three seconds. Thus, if Hensley were going sixty miles per hour, his car would be invisible to Bates when Bates first looked back and yet it could still arrive at the impact point in less than three seconds.

The jury could find that if Hensley had been keeping a careful lookout, he could have seen Bates' car as soon as he crested the hill. Even at sixty miles per hour, he would have had Bates' car under observation for three seconds.

■ The accident took place in the westbound lane near the center of the lane—the lane Hensley was properly moving in. The jury could reason from the fact that as apparently Hensley took no evasive action, i. e., he did not move to the right shoulder and pass behind or to the eastbound lane and pass in front, he did not see the Bates' car or was traveling at a speed so great as to be unable to react in time to avoid the accident, or both. We think that the facts are sufficient to support a finding by the jury that the defendant failed to keep a proper lookout.

Hensley contends that even if the evidence was sufficient to establish that he was driving at an excessive rate of speed, there was insufficient evidence to establish that the excessive rate of speed was the proximate cause of the accident. Hecker v. Schwartz, 426 S.W.2d 22 (Mo. 1968); Osborn v. McBride, 400 S.W.2d 185 (Mo.1966). We disagree.

The jury could find that driving at a rate of speed of sixty miles an hour and failing to keep a careful lookout combined to form the proximate cause of the accident. At sixty miles an hour, Hensley, would have had three seconds to react instead of the nearly six seconds if he had been traveling at thirty miles per hour. Hensley admitted, in an interrogatory read into the record as a declaration against interest, that he saw the defendant's car prior to the collision.

---

5. Hensley calculated that it would take two seconds. However, his calculations do not take into account the fact of the nine foot shoulder.

The evidence is sufficient to find that Hensley took no steps to avoid the accident. Thus, the jury could find that the plaintiff's speed created conditions under which it became impossible for him to react in sufficient time to avoid the collision.

We believe that the trial court also erred in determining that Bates was guilty of contributory negligence as a matter of law in failing to keep a careful lookout.

■ Hensley had the burden of proving that Bates was guilty of contributory negligence. In Hardy v. St. Louis-San Francisco Railway Company, 406 S.W.2d 653, 658 (Mo.1968), the court stated: " * * * 'The burden of proving plaintiff's contributory negligence was on the defendant.' And as against the charge of failure to look or listen or to have control of one's vehicle it was said, 'Before the court can declare that contributory negligence is shown as a matter of law, such negligence must clearly appear from admitted or conclusively proved facts. If reasonable men may honestly differ with respect to the inferences to be drawn from the facts, then the question whether the driver exercised the care required for his own safety is for the jury.'" (Quoted from Zumault v. Wabash Railroad Company, 302 S.W.2d 861, 862–863 (Mo.1957).)

■ Furthermore, the question of whether a proper lookout has been maintained is usually a jury question. Slaughter v. Myers, 335 S.W.2d 50 (Mo. 1960); Hammon v. Gentlemann, 423 S.W.2d 5 (Mo.App.1967).

Apparently, the trial court based its conclusion on the premise that one is held negligent if he failed to see that which could be seen in the exercise of due care. Kaley v. Huntley, 333 Mo. 771, 776–777, 63 S.W.2d 21, 23–24 (1933).

■ As previously stated, Bates could see to the crest of the hill. The first time he looked, the jury could find that he could not have seen Hensley. The second time that he looked, he must have been able to see Hensley or the accident could not have occurred. Thus, the trial court must have relied on this failure to see that which was plainly visible. However, the failure to keep a proper lookout is immaterial unless it is also shown that the exercise of a proper lookout could have prevented the accident. Hansmann v. Rupkey, 428 S.W.2d 952 (Mo.App.1968); Graham v. Conner, 412 S.W.2d 193 (Mo.App.1967).

Here, it has been shown that with excessive speed, Hensley could have reached the point of the accident from the other side of the hill in less than three seconds. Considering Bates' lookout in the opposite direction and the necessary reaction time, the jury could well have concluded that at the moment of Bates' second look, there was insufficient time to take effective preventative action.[6]

The defendant cannot be faulted for failing to see the taxicab when it first crested the hill.

"It is true that a motorist is required to keep a careful lookout, but he must look both to his right and to his left and forward (and in some cases also behind him). He can not look in one direction all the time, and neither is he required to keep his head in constant swinging motion from side to side. * * *" (Citations omitted.) Norris v. Winkler, *supra*, 402 S.W.2d at 27.

Hensley contends that Branscum v. Glaser, 234 S.W.2d 626 (Mo.1950) and Roberts v. Consolidated Paving & Material Co., 335 Mo. 6, 70 S.W.2d 543 (1934) are controlling. Both are distinguishable on their facts.

In both cases, negligence was predicated upon plaintiff's failure to see an approaching motor vehicle which was plainly visible prior to proceeding from a stopped position across an intersection.

---

6. See, Reed v. Burks, 393 S.W.2d 377 (Mo.App.1965). There, it was held that 1.6 seconds was an insufficient time upon which to base a submission of failure to keep a careful lookout could be predicated.

Here, Bates could not see Hensley's taxicab prior to proceeding. Bates would have easily cleared the westbound traffic lane prior to Hensley had Hensley been driving within the speed limit.

It is conceded that Bates had a continuing duty to look. However, as pointed out above, Bates had a duty to look the other way also. By the time that he did look again to the east, a second later, the jury could have found that he was in a position of peril from which he could not escape. The jury could also find that this perilous position was brought on not by his own negligence but by Hensley's negligence in traveling at an excessive speed.

█ We thus hold that the defendant, Bates, cannot be held contributorily negligent as a matter of law for failing to keep a careful lookout.

While we reverse the trial court's order granting the plaintiff's motion for judgment notwithstanding the verdict, we affirm its action insofar as it granted a new trial.

██ The trial court is not bound to take the view of the evidence most favorable to Bates in deciding whether to grant the motion for a new trial. " * * * The court may disbelieve witnesses and may grant a new trial even where there is substantial evidence to sustain the verdict. * * *." Altrichter v. Shell Oil Company, 263 F.2d 377, 380 (8th Cir. 1959). The granting of the motion for a new trial is within the sound discretion of the trial court and may not be reversed unless there is a clear abuse of that discretion. We find no such abuse of discretion.

Reversed in part, affirmed in part and remanded for further action consistent with this opinion. Each party is to bear his own costs.

GIBSON, Circuit Judge (dissenting).

I respectfully dissent. The defendant Bates's car left a position of relative safety on the shoulder of the highway to make a U turn back towards Branson, started to cross a well traveled highway and proceeded without ascertaining that there was no approaching traffic. The highway traffic had the right of way and it was incumbent on Bates to make sure he could proceed across the westbound lane and into the eastbound lane without danger to himself and to others and without disturbing the flow of approaching traffic. Bates testified he looked before starting his left turn and did not see any cars coming, he traveled 6 or 8 feet across the highway when he looked again to the east and saw no cars coming, he then looked up the other side to the west and at about that time his automobile was struck. He testified his speed at the time of impact was not over 7 or 8 miles per hour and he had just shifted out of first gear at the time of impact. He also testified his car had gone over "the middle of the street", and that most of his car was in the eastbound lane of the highway at the time of impact; further, he did not see Hensley's automobile at any time prior to the impact.

The undisputed physical evidence located the point of impact in the westbound lane. The gouge mark and the accompanying debris caused by the collision places the impact clearly in plaintiff Hensley's lane of travel.[1]

While we must view the evidence in the light most favorable to the prevailing party and give the prevailing party benefit of all inferences that might reasonably be drawn, Kotula v. Ford Motor Co., 338 F.2d 732 (8 Cir. 1964), cert. denied, 380 U.S. 979, 85 S.Ct. 1333, 14 L.Ed.2d 273, the defendant Bates still had the burden of establishing his case

1. There was conflicting evidence on the distances involved. Trooper Ashurst testified the gouge mark was located 5½ feet north of the center line and 75 feet east of the east line of the traveled driveway or entrance to a rock shop and was 85 steps or 255 feet west of the crest of the hill; whereas, the photographer Craig testified the Rock Shop sign was 170 paces or 510 feet from the crest of the hill.

which included primary negligence and causation. Osterhaus v. Gladstone Hotel Corp., 344 S.W.2d 91 (Mo.1961). *Osterhaus* in evaluating circumstantial evidence quoted with approval the language used in Hogue v. Wurdack, 298 S.W.2d 492, 498 (Mo.App.1957), aff'd, 316 S.W. 2d 523 (Mo.1958):

> "[B]ut * * * the shown circumstances must be such that the facts necessary to support the finding may be inferred and reasonably must follow, that the existence of such facts may not depend upon guesswork, conjecture and speculation, and that the evidence should have a tendency to exclude every reasonable conclusion other than the one desired. Although an inference need not be justified beyond all doubt and is not precluded by a mere possibility that the contrary may be true * * *, the law does not countenance the drawing of forced and violent inferences which do not arise from a reasonable interpretation of the facts actually shown * * *."

The validity of the judgment notwithstanding the verdict rests upon the analysis of what inferences reasonably may be drawn from the evidence.

I depart from the majority's analysis in that their hypothesis takes an unreasonable view of the evidence adduced in the case. The undisputed evidence shows that Bates was squarely blocking the westbound lane of traffic while attempting to complete his left turn onto the highway, having traveled only about 13 feet from the shoulder in a direct line or perhaps a somewhat longer distance if he utilized a circular movement in the nature of a U turn; but in any event he did not see the Hensley car at any time and the only reasonable inference is that he failed to keep a proper lookout and did not allow Hensley sufficient time to take evasive action before he abruptly proceeded into Hensley's lane of traffic. The Bates car was caved in at a point a few feet to the rear of its midsection on the left side, and the point of impact was approximately in the middle of the westbound lane. When his car left the shoulder to enter the highway Bates was obligated to give way to traffic on the highway and not to enter onto the highway until he could do so with safety to himself and to others using the highway. He is charged with the highest degree of care under Missouri law and he should have kept a continual lookout for traffic in both directions. Anthony v. Morrow, 306 S.W.2d 581, 586 (Mo. App.1957).

In discussing a driver's obligation to carefully observe approaching traffic, *Anthony* at 585–586 sets forth the Missouri law as:

> "The applicable rules of law were well stated by this court in Riley v. Young, Mo.App., 218 S.W.2d 805, loc. cit. 808, as follows:
>
> > 'There is no doubt of the duty of the operator of a motor vehicle to keep a careful or vigilant watch ahead for other persons or vehicles on the highway; and for a motorist to fulfill this duty he must look in such an observant manner as to enable him to see and discover such conditions as one in the exercise of the highest degree of care for the safety of himself and others would be expected to see under like or similar circumstances. Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21; Brown v. Toedebush Transfer, 354 Mo. 611, 190 S.W.2d 239; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935; Rohmann v. City of Richmond Heights, Mo.App., 135 S.W.2d 378. Such duty, being fixed, uniform, and continuous, is in that sense constant; and if a motorist, having the duty to look, fails to see what is plainly visible, he is guilty of negligence and liable for its consequences. Wright v. Osborn, supra; Rohmann v. City of Richmond Heights, supra.'"

I realize that Bates could not look in opposite directions at the same instant but he still should have kept a continuous lookout in crossing a traveled highway, looking both to the left and to the right for highway traffic, glancing suf-

ficiently often in each direction to ascertain that he could proceed without encroaching upon the right of way of other highway traffic. With normal peripheral vision he would have had to have seen the Hensley car before blocking the westbound lane of traffic if he had merely glanced towards the east. Furthermore, since his unobstructed view to the west was greater than his unobstructed view to the east, and since he was first entering the westbound lane, his attention should have been directed in large part to westbound traffic while entering that lane.

Bates is required under the Missouri law to have seen what he could have seen in the exercise of due care and caution for his own safety; had he looked towards the east (from whence the Hensley car was approaching) he would have seen Hensley's car, and the failure to see what is plainly visible constitutes contributory negligence as a matter of law. Branscum v. Glaser, 234 S.W.2d 626, 627 (Mo.1950). Therefore, regardless of Hensley's hypothecated negligence,[2] Bates's contributory negligence would bar him from recovery on a primary negligence complaint in Missouri. The Missouri humanitarian doctrine was not invoked in this case and probably could not be utilized under the factual situation disclosed by the evidence. Therefore, I do not think it proper to say that even though Bates negligently drove his car onto the highway he was then in a position of peril from which he could not extricate himself, and thereby excuse his negligence in failing to look towards the east and see the Hensley car.

Bates's own evidence shows that Hensley, contrary to the inferences made by the majority, did see the Bates car prior to its entrance onto the highway. Bates introduced in evidence in his case in chief as an admission against interest

an interrogatory addressed to Hensley. The interrogatory is as follows:

"Q. State when and where you first saw the Ross Bates automobile prior to the collision on the 16th day of August, 1965.

"A. The Ross car was stopped on said street to my right facing the highway and started forward real fast and made or attempted to make a swerve to his left and we collided on my side or a little to the left of my side."

It should also be noted that the defendant or the defendant's insurance company had settled with Hensley on his complaint against Bates and that Hensley was not able to testify because of a brain tumor, unrelated to the accident, which incapacitated him from attending the trial.

While I am in full accord with the rule of viewing the evidence in a light most favorable to the verdict, I also think consideration should be given to the ruling and opinion of the trial judge who had the advantage of hearing all of the evidence and of viewing the demeanor of the witnesses. When his opinion, upon reflection, was that a submissible case was either not made or contributory negligence was established as a matter of law, due weight should be accorded his view in sifting through the reasonable inferences to be drawn from the evidence.

In this case I think the trial judge was correct in granting a judgment notwithstanding the verdict under the applicable Missouri law and under a reasonable evaluation of the factual situation disclosed by the defendant's evidence.

I would affirm the judgment.

2. While Bates is not bound by Hensley's statement that he was not going over 30 miles per hour and while I agree with the majority that the physical evidence on the force of the impact may justify an inference of speed in excess of 30 miles per hour, I do not think it would reasonably justify an inference of a speed of 60 miles per hour.