George S. NORRIS and Anna C. Norris, Respondents,

v.

Jean WINKLER, Appellant.

No. 24314.

Kansas City Court of Appeals.

Missouri.

April 4, 1966.

Terence C. Porter, Welliver, Porter & Cleaveland, Columbia, for appellant.

John J. Frank, Hullverson, Richardson & Hullverson, St. Louis, Falzone & Falzone, Moberly, Corinne Richardson, St. Louis, of counsel, for respondent.

HOWARD, Judge.

This case grows out of a collision at an uncontrolled intersection which occurred on June 10, 1963, in Moberly, Missouri. A jury trial resulted in verdict and judgment for the plaintiffs in the amount of $5,050.00. Defendant has duly appealed to this court. We shall refer to the parties as they appeared below. When we refer to plaintiff in the singular we mean Mr. Norris.

Prior to the collision the plaintiffs, Mr. and Mrs. George S. Norris, were driving south on Alt Street and the defendant Mrs. Jean Winkler, with her children, was driving west on Carpenter Street. Mr. Norris testifed that he was traveling 15 to 20 miles an hour, "give or take a mile or two". He testified that when he was 40 to 45 feet back from the intersection, or "40 some odd feet" back, he looked to his left, but that his view was obstructed by some bushes, a tree and a utility pole and he did not see any traffic coming from his left. He again looked to his left when he was 25 to 30, or 20 to 30, feet from the intersection, that his view was not obstructed at that time, that he saw approximately 60 feet to the east on Carpenter Street and that he did not see any oncoming traffic. He stated that he proceeded across the intersection at a speed "not in excess of 15 miles per hour and under 20". He glanced to his left, out of the corner of his eye, just before the impact, but did not see defendant's car. He stated that at the time of impact his speed was 15 miles per hour "give or take a mile or two".

Mrs. Norris corroborated her husband's testimony and stated that she looked to her left when she was 20 to 25 feet from the intersection and did not see any cars approaching from her left. When the front of plaintiffs' car was just past the middle of the intersection, plaintiff stated "I was hit a terrific impact". Plaintiffs' car was knocked up over the curb, across the parking and the sidewalk and into a yard and almost against a house. Mr. Norris was thrown partly out of the car and dragged along until it came to a stop. He suffered a broken pelvis, and some minor abrasions. He was taken to the hospital in Moberly and was later transferred to the Wabash Employees' Hospital in Decatur, Illinois.

Neither Mr. Norris nor his wife saw defendant's car prior to the collision. Defendant testifed that she was traveling, "I will say 15 to 20 miles per hour". That she did not see plaintiffs' car until she was 3 feet from the east curb line of Alt Street, and at that time plaintiffs' car was one car length back from the north curb line of

Carpenter Street. Defendant attempted to put on her brakes and swerve to her left, but could not avoid the collision. She said that "Plaintiff shot right in front of me" increasing his speed. Defendant told the investigating police officer that she was going 20 miles per hour at the time of the collision. The police place the point of impact as being 13 feet 4 inches south of the north curb line of Carpenter Street and 12 feet west of the east curb line of Alt Street. From the testimony and the exhibits, it appears that the right front corner of defendant's car struck the left front fender of plaintiff's car, at a point approximately even with the rear of the left front wheel. Additional facts will be set forth as needed in the opinion.

On this appeal defendant first complains that the trial court erred in failing to sustain her motion for a directed verdict and overruling her after trial motion to set aside the verdict and judgment for the plaintiffs and enter judgment for the defendant because (1) "the plaintiff was guilty of contributory negligence as a matter of law" and (2) "plaintiffs did not make a submissible case of humanitarian negligence". Defendant's point one does not further elaborate. She does not give any reason why plaintiffs were contributorily negligent as a matter of law and does not tell us in what manner plaintiffs failed to make a submissible case of humanitarian negligence. The motions filed in the trial court are no more illuminating. They simply contain the same conclusions.

■ Plaintiffs contend that this point one of defendant's brief is insufficient to present anything for review. This contention is well taken. Defendant has failed to comply with the requirements of Civil Rule 83.05, V.A.M.R. The discussion in Myers v. Karchmer, Mo., 313 S.W.2d 697 is peculiarly appropriate to the case at bar. However, as in that case, we will consider the merits of defendant's contentions.

■ From a careful reading of the argument contained in defendant's brief, we are able to discover that she contends that plaintiffs were contributorily negligent as a matter of law (1) in failing to maintain a lookout and failing to see what was plainly visible, and (2) in entering the intersection without stopping. Defendant bases her argument on the assumption that the two cars were both proceeding at the same speed of 15 miles per hour. Thus when plaintiff looked to his left, defendant's car was plainly visible and he was contributorily negligent as a matter of law either because he did not look when he said he did, or if he looked, he did not see what was plainly visible. In this argument defendant fails to consider the requirement that we give plaintiff the benefit of a consideration of the facts most favorable to the plaintiff and ignore evidence of the defendant, except as it may benefit plaintiff. When we consider the facts in this light, we see that when plaintiff was between 20 and 30 feet from the intersection he looked to his left and could see at least 60 feet east on Carpenter Street from where he was sitting, and did not see defendant. From this we can infer that defendant was more than 60 feet from the center of the intersection at this time. Plaintiff testified that he was going approximately 15 miles per hour, with a spread in his estimate of speed from 13 to 22 miles per hour. Plaintiff did not give any evidence of the speed of defendant's car, because he did not see it prior to the collision. Defendant testified that she was going 15 to 20 miles per hour; she told the police officer she was going 20 miles per hour. Plaintiffs are not bound by this testimony. Plaintiffs' evidence was that when defendant's car struck their car there was a "terrific impact" and it appears to be undisputed that the force of the impact knocked plaintiffs' car up over the curb, across what appears from the exhibits to be an abnormally wide parking, and across the sidewalk, into a yard and almost into the house on the corner. From this evidence the jury could well have found that defendant's speed was considerably in excess of 20 miles per hour. The plaintiffs are not

bound by defendant's evidence that she was only going 15 miles per hour.

Defendant cites only one case on this issue and that is Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621. Defendant's brief contains a purported quotation from this case but it is inaccurate and places language in juxtaposition, which in the opinion is separated by a great amount of other reasoning, so that the context of the language as quoted, is not the same as that in which such language was used in the opinion. This cited case does not rule the point as it is presented in the case at bar. In our case the jury could well find that when the plaintiff first looked to his left he could not see east on Carpenter Street because his view was obstructed; that he again looked to his left when 20 to 30 feet from the intersection, and at that time, could and did see to the east on Carpenter Street at least a distance of 60 feet, and that defendant was not in view but was further back on Carpenter Street. It is in evidence that plaintiff's view to the right or west on Carpenter Street was blocked by a hedge, some trees, a house etc., and that such situation required more than normal observation in the exercise of the required degree of care.

■ It is true that a motorist is required to keep a careful lookout, but he must look both to his right and to his left and forward (and in some cases also behind him). He can not look in one direction all the time, and neither is he required to keep his head in constant swinging motion from side to side. See Slaughter v. Myers, Mo., 335 S.W.2d 50, Burke v. Renick, Mo.App., 249 S.W.2d 513.

Here the plaintiff looked to his left when he was 20 to 30 feet from the intersection and did not see defendant. We can not say as a matter of law that defendant's car was within this 60 feet and therefore in plain sight when plaintiff looked. There is no evidence as to the location of defendant's car at that time, and we can not say that defendant's car, wherever it may have been, was plainly visible. Plaintiff then looked to his right while proceeding on into the intersection. There is no evidence at what point plaintiff could have seen defendant's car, if he had looked again. But as plaintiff continued forward into the intersection, he very soon reached a point where he could no longer stop short of the path of defendant's car and thereby avoid the accident. If he had looked after he had reached that point it would have done no good. Thus, even if we assume he was negligent in not looking again, we can not say as a matter of law that looking would have enabled him to have avoided the accident. Such negligence, if any, occurring after it was too late to avoid the collision would not be a proximate cause of the collision and damage.

■ In this case we must remember that under the ordinance of the City of Moberly, which was in evidence, if plaintiff entered the intersection first, or at approximately the same time as defendant, he had the right of way, and could reasonably assume that traffic approaching from his left would yield the right of way, which he was proceeding to exercise. Under these circumstances we can only hold that this question was one which might have been presented to the jury, but is not a matter of law for decision by the court. See Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918; Hutson v. Highley, Mo.App., 384 S.W.2d 278; Jones v. Fritz, Mo.App., 353 S.W.2d 393; Hunt v. Babb, Mo.App., 340 S.W.2d 177; Fuzzell v. Williams, Mo.App., 288 S.W.2d 372; Harding v. Peterson, Mo. App., 227 S.W.2d 88.

The discussion of the Supreme Court in the case of Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, is particularly revealing in this matter. It is there said: "Defendant had the burden of proving contributory negligence of plaintiff. Contributory negligence as a matter of law can seldom be established by oral testimony offered solely by defendant. Usually it must appear in plaintiff's case, or be established by testimony on the part of defendant which plain-

tiff concedes to be true, or by documentary evidence or proof of facts or circumstances by defendant which leave room for no other reasonable inference. State ex rel. Thompson v. Shain, 349 Mo. 1075, 163 S.W. 2d 967. In the exercise of his duty to exercise care in looking out for his own safety, plaintiff was obliged to observe the entire situation at the intersection as disclosed by his view ahead and laterally, but he obviously could not maintain an uninterrupted lookout in both directions. There was evidence tending to show that plaintiff and defendant reached the intersection at approximately the same time, and there was evidence tending to show that plaintiff reached and moved into the intersection when defendant was yet some distance to the eastward. Although in the exercise of care plaintiff must have seen and become aware of defendant's approach even though the view to plaintiff's left was somewhat obstructed, we believe it should not be said as a matter of law that, in the circumstances of the collision including the circumstance of plaintiff's favored position as a traveler approaching from defendant's right, plaintiff was not justified in assuming that defendant would manage or regulate the speed and progress of her automobile so that plaintiff could pass safely over the intersection."

Defendant's contention that plaintiffs were contributorily negligent as a matter of law "in driving into the intersection without stopping" is supported only by citing the case of Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540. This case involved a fire chief's car on an emergency run with red light flashing, as it was crossing the broad intersection of 12th and Market Streets, in St. Louis, Missouri, against the red light. The driver saw the bus with which he later collided, and which had entered the intersection on its green light. In that case the court found that it was apparent to the driver that the bus was not going to yield the right of way at a time when the driver could have avoided the accident. This has absolutely no application to the case at bar where plaintiff never did see defendant. We therefore hold that plaintiffs were not contributorily negligent as a matter of law for either of the reasons advanced by the defendant.

As to defendant's contention that plaintiffs failed to make a submissible humanitarian case, her argument is again based on the assumption that both vehicles were proceeding at the same speed and were therefore at equal distances from the intersection and point of collision at all times. Again we must consider the evidence in the light most favorable to the plaintiffs, and in so considering the evidence, we can not assume this premise of equal speed and equal distance from the intersection.

In her argument, defendant contends that under the evidence plaintiffs did not enter the zone of imminent peril until they crossed defendant's line of travel. In support of this contention defendant cites Banks v. Koogler, Mo., 291 S.W.2d 883; Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972; Claridge v Anzolone, 359 Mo. 65, 220 S.W.2d 33.

In the Banks, Frandeka and Claridge cases, the plaintiffs saw defendant's vehicle prior to the time plaintiff entered the zone of imminent peril and thus such zone was reduced to its narrowest limits. This is not true in the present case. Here plaintiff was oblivious to defendant's approach and unaware of his danger up to the very point of impact. Thus, even under the authorities cited by defendant the zone of imminent peril was widened. It was certainly wider than the area over which defendant's car would travel as it crossed the intersection. The defendant had a duty when approaching this intersection, to observe what was visible; and, as soon as it became apparent to her, or should have become apparent to her if she were performing her duty to look and to see, that plaintiff was oblivious and was going to proceed across the intersection in front of her, it became her duty to take whatever action she could, with safety to herself

and her children passengers, to avoid the collision.

From photographs introduced in evidence, the jury could find that when defendant was 89 feet back from the center of Alt Street, she could see a car at least 100 feet north on Alt Street. When she was 138 feet back from the center of Alt Street, she could see far enough back on Alt Street to see the complete front of the corner house and the house next to it, facing her and facing Alt Street. This distance is not in evidence, but from the photographic exhibits it is apparent that it is a considerable distance and would give ample opportunity to avoid a collision at the intersection if plaintiffs' car was then visible. Thus we cannot say as a matter of law, as the court held in West v. St. Louis-San Francisco Ry. Co., Mo., 295 S.W.2d 48, that by the time defendant could have discovered plaintiffs' obliviousness it was too late for defendant to take the necessary action to avoid the collision. Neither can we say, as the court said in Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, that the question of defendant's ability to avert the collision after plaintiffs were in a position of imminent peril would be one of pure conjecture if submitted to the jury.

Defendant also argues that, because the humanitarian negligence instruction based defendant's negligence upon failure to slow her vehicle rather than on failure to stop, no submissible case was made. This because the jury could not find that a slowing would have allowed plaintiffs to have escaped. In support of that argument defendant cites Harrow v. Kansas City Public Service Co., Mo., 233 S.W.2d 644. In that case plaintiff was standing on the street car tracks waiting for traffic to clear before he walked on across the street. He was oblivious of the approach of the street car and the court held that no humanitarian case was made on failure to slow the vehicle because the mere slowing would not have helped plaintiff unless he moved from the street car track, and since he was oblivious there was nothing from

which the jury could find that he would have moved in time, even if the street car had been slowed. It is apparent that this argument is not applicable to the case at bar because the evidence shows and the jury could certainly find that the plaintiff was proceeding on across the intersection, and in the matter of a fraction of a second would have cleared the line of defendant's travel.

■ Under the authority of many cases, of which State ex rel. Sirkin & Needles Moving Co. v. Hostetter, 340 Mo. 211, 101 S.W.2d 50 may serve as an example, defendant had a duty to observe what was clearly visible and the jury could find that when plaintiff was 20 to 30 feet from the intersection defendant was more than 60 feet from the intersection, according to plaintiff's testimony, and according to the exhibits defendant could see plaintiffs' car at that point when she was as far away as 138 feet, or more. The jury could find that if defendant had performed her duty and observed plaintiff as soon as she could, she would have observed him approaching and proceeding through the intersection at undiminishing speed and thus would have become aware of his obliviousness in ample time to have slowed her car sufficiently to have allowed plaintiff to proceed across the intersection without harm. It is apparent that she did not keep a lookout because she testified that she did not see plaintiffs' car until she was only three feet from the intersection. Certainly under these facts the question was one for the jury. Plaintiffs made a submissible case. This is well demonstrated by the decision in the case of Catanzaro v. McKay, Mo., 277 S.W.2d 566, l. c. 569, where the court said: "Consequently, it is apparent that if defendant had slackened his speed at all plaintiff would have cleared defendant's path. And certainly it is obvious that any slackening and swerving would have avoided the collision. We think under the circumstances a jury reasonably could have found that if defendant, after plaintiff came into imminent peril, had de-

creased his speed instead of increasing it (as the jury could find he did), the collision would have been avoided. And indeed the evidence, viewed most favorably from plaintiff's standpoint, was that the defendant driver did not take any action when he was 66 feet away (after reaction time). On the contrary, defendant driver testified that he did not see plaintiff until defendants' car was 25 feet west of the intersection. He applied his brakes at that time, which caused skid marks about 25 feet long, and, as noted, the skid marks were such that the jury could reasonably find that defendant swerved sharply to his right into the center of plaintiff's automobile. Thus, the jury reasonably could find that defendant driver, instead of taking action to avoid the collision when he was 66 feet away, continued to increase his speed until he was only 25 feet from the collision point."

The court concluded: "All of which results in the conclusion that, under the evidence considered favorably to plaintiff, it may be demonstrated, without guess and conjecture, that the defendant driver, in the exercise of the highest degree of care, could have averted the casualty by slackening and swerving after he should have seen that plaintiff was in imminent peril. That conclusion precludes us from declaring as a matter of law that no submissible case was made. Ukman v. Hoover Motor Express Co., supra [Mo.] 269 S.W.2d [35] 39(5)."

We thus have ruled all of the contentions which may be gleaned from defendant's argument under point one of her brief against defendant. Point four of defendant's brief complains of the giving of plaintiffs' humanitarian negligence instruction because it was "not supported by substantial evidence". What we have just said rules this contention against defendant also.

Defendant next complains of the giving of instruction P-1 (for Mr. Norris's cause of action) and instruction P-2 (for Mrs. Norris's cause of action). These instructions are identical except that one refers to Mr. Norris and the other refers to Mrs. Norris. In pertinent part they read:

"The Court instructs the jury that if you find and believe from the evidence that Mr. Norris arrived at the intersection mentioned in evidence either before or at approximately the same time that the defendant did so, and that the defendant failed to yield the right of way to Mr. Norris and failed to permit him to proceed across the intersection ahead of the defendant, and that in so failing the defendant failed to exercise the highest degree of care and was negligent, and that Mr. Norris was injured as a direct result thereof, * * *"

Defendant complains that these instructions "purport to give the plaintiffs an unqualified right to proceed across the intersection without regard to the question of whether a very careful person would do so under the same or similar circumstances". In support of this assignment of error, defendant cites authority for the undisputed proposition that one who has the right of way at an intersection can not, by reason of such right of way, proceed to cross the intersection blindly and without regard for the circumstances. From this premise defendant reasons that instructions P-1 and P-2 should require the jury to find that the plaintiffs were exercising the highest degree of care in exercising their right of way and attempting to cross the intersection under the existing circumstances. This conclusion does not follow.

Defendant does not complain about that part of these instructions which advised the jury that plaintiff had the right of way if he arrived at the intersection either before or at approximately the same time as defendant. Her only complaint is that the instructions did not also affirmatively require the jury to find that Mr. Norris was in the exercise of the highest degree of care in proceeding through the intersection. While it is true that the law imposes such

duty upon Mr. Norris under the circumstances here revealed, this is a matter of contributory negligence on the part of Mr. Norris, which does not diminish or in any way affect the duty of the defendant to yield the right of way under the circumstances which the jury was required to find. See Creech v. Blackwell, Mo., 298 S.W.2d 394, where the court said: "Even in the absence of a statute or ordinance so requiring, it is the rule in this state that the vehicle first reaching and entering an intersection has the right of way over a vehicle subsequently reaching the intersection, provided, of course, that the driver of the vehicle first entering the intersection would be contributorily negligent if he entered when it appeared or should have appeared to him as a reasonably prudent person that to enter would probably result in a collision. That proviso, however, as will be more specifically pointed out hereinafter, has to do with the contributory negligence of the first arrival and does not pertain to or affect or obviate the primary *duty* of the second arrival to permit the first in the intersection to pass in safety."

■ Thus it would appear that in consideration of these instructions we are dealing with a contention of the defendant that the instructions are erroneous because they do not negative contributory negligence on the part of plaintiffs. As is set out in Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, Martin v. Kansas City, Mo., 340 S.W.2d 645, and Croney v. Pence, Mo.App., 346 S.W.2d 574, where the defense of contributory negligence is pleaded and evidence is adduced in support thereof, *and where an instruction on contributory negligence is given,* the plaintiff's verdict directing instruction based on primary negligence must negative contributory negligence. This may be done either by an express requirement of the instruction referring to the contributory negligence instruction, or by a provision of plaintiffs' verdict directing instruction affirmatively requiring a finding by the jury that the plaintiff was in the exercise of the highest degree of care.

■ In the present case the defense of contributory negligence was expressly pleaded and evidence was adduced bearing on such defense. Defendant submitted what she describes as a contributory negligence instruction (Instruction D–B) but such instruction was refused by the court (and we hereinafter rule that such refusal was proper) and no contributory negligence instruction was given. Thus the requirements of the above cited cases are not applicable in this case, but instead this case is ruled by the decision in Shepard v. Harris, Mo., en banc, 329 S.W.2d 1, which held that where a contributory negligence instruction was not given. the plaintiff was not required to negative contributory negligence in his verdict directing instruction. See also Moore v. Ready Mixed Concrete Co., supra. In reaching this conclusion the court said, 1. c. 6: "It seems clear then that a plaintiff's failure to negative his contributory negligence in a verdict-directing instruction is neither an omission of an essential element of his claim nor in any sense a misdirection as to the law. A plaintiff may recover when he has proved, in the jury's judgment, the essential elements of his case. It follows that he is entitled to recover, irrespective of what the evidence may show as to contributory negligence (short of contributory negligence as a matter of law) unless his recovery is defeated by the jury's finding for defendant on defendant's affirmative defense pleaded, supported, *and submitted."* The court concluded: "We are of the opinion and therefore hold that when a defendant fails to submit the affirmative defense of contributory negligence he has thereby abandoned that defense and it no longer remains an issue in the case for any purpose, and, consequently, a plaintiff's verdict-directing instruction which ignores such abandoned issue of contributory negligence is not erroneous." Therefore instructions P–1 and P–2 are not erroneous in the manner claimed by defendant.

Defendant also complains of the refusal of the trial court to give her proferred instruction D–B. She denominates this as a contributory negligence instruction but it does not require a finding of negligence on the part of plaintiff. It is in the form of a verdict directing instruction and defendant says she took it from the plaintiffs' verdict directing instruction as set out in Jameson v. Fox, Mo.App., 269 S.W.2d 140. We observe that there are significant differences between the two instructions. Defendant's instruction, after advising the jury that if they found certain facts, they could impute Mr. Norris's negligence to his wife, instructed the jury if they found (1) that defendant's car entered the intersection "ahead of and before the plaintiffs'" car and if they found (2) that defendant "exercised the highest degree of care in the operation of her automobile", then defendant "had the right of way" over plaintiffs "even though the plaintiffs' vehicle was at that time approaching the intersection from the right of defendant's car", and if they found that plaintiffs' car collided with defendant's car at the intersection "under the circumstances above mentioned" then neither plaintiff could recover and the jury was directed to return a verdict for the defendant "unless you find in favor of plaintiffs under instruction No. P–3" (plaintiffs' humanitarian instruction).

It is to be noted that this instruction asserts that if the jury found the required facts, then the defendant had the right of way, but does not require the jury to find that plaintiff failed to yield the right of way, or that such failure was negligent or that such negligence caused, or contributed to cause, the injuries complained of. It simply directs a verdict for defendant if there was a collision and the jury found that defendant entered the intersection ahead of plaintiffs and exercised the highest degree of care in the operation of her automobile.

Even if defendant reached the intersection first and therefore could claim the right of way, there still remains the jury question of whether or not the plaintiff was negligent in failing to yield the right of way to defendant. See McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135; Tener v. Hill, Mo.App., 394 S.W.2d 425 and Pappas Pie & Baking Co. v. Stroh Bros. Delivery Co., Mo.App., 67 S.W.2d 793.

Defendant contends that this requirement is satisfied by requiring the jury to find that defendant "exercised the highest degree of care in the operation of her automobile". We can not agree. This finding pertains only to the care exercised by defendant, it does not require any finding by the jury as to the exercise of care, or the lack thereof, by plaintiff, and the required finding is not sufficiently broad to carry with it a finding of lack of care by plaintiff. The instruction in Jameson was given on behalf of plaintiffs. Here the instruction was offered by defendant and she claims it was designed to perform the functions of a contributory negligence instruction. The requirements are not precisely the same in both instances. As has been pointed out in our consideration of plaintiffs' instructions, a driver with the right of way must use the highest degree of care in exercising that right of way and can not proceed if to do so would likely result in a collision. Such duty includes that of lookout, i. e., to look and to see. If such lookout would reveal the likelihood of collision then the driver must forego or yield his right of way and avoid the collision. Defendant's instruction did not require this because, as is pointed out in Shields v. Keller, 348 Mo. 326, 153 S.W.2d 60, "the term 'operation' would hardly be understood to include 'lookout'." In this respect, defendant's instruction is to be contrasted with the broader requirement of the approved instruction set out in Jameson where the jury was required to "find that in *entering and proceeding across* said intersection the plaintiff, Raymond Silkey, exercised such care as a very careful and prudent person would ordinarily exercise under the same

or similar circumstances" (emphasis supplied).

In Dawley v. Hoy, Mo., 341 S.W.2d 111, it was held that a contributory negligence instruction which did not require the jury to find a causal connection between plaintiff's negligence and the resulting injuries was erroneous. This is especially applicable to the instruction before us. A finding of the same causal connection is required of a verdict directing instruction. The instruction approved in Jameson required a finding of such causal connection but there is no such requirement in defendant's instruction.

This instruction D–B makes no mention of the possibility of the two vehicles arriving at the intersection at approximately the same time. It bases right of way solely on the finding that the defendant's automobile "entered the intersection ahead of or before the plaintiff's Chrysler automobile". Thus, if defendant's car entered the intersection only a split second before the plaintiff's car, the instruction says the defendant has the right of way. Defendant testified that she first saw plaintiff's car when she was 3 feet from the intersection and plaintiff's car was one car length from the intersection. Although we do not know from the evidence the exact length of plaintiff's car, and although there were varying estimates of speed by both parties, it is apparent that if defendant's testimony were true, then much less than one second's time would have elapsed between the entry of the two cars into the intersection. From this evidence the jury could well have found that the two cars did, in fact, enter the intersection at approximately the same time. If they so found, plaintiffs' instructions P-1 and P-2 would direct verdicts for the plaintiffs, and if the jury further believed that defendant's car entered the intersection first, but only a split second before plaintiffs' car then this instruction would direct a verdict for defendant. Such conflict between instructions is not permissible and this instruction is also in direct contravention of the provisions of the governing ordinance. In reaching this conclusion we are mindful of the holding in Jameson that the given instruction did not conflict with another instruction given by the court, which apparently concerned the situation where both vehicles entered the intersection at approximately the same time. The other instruction is not set out, and therefore the flat statement by the court that there was no conflict does not help us. In any event, we have an impermissible conflict.

■ For all of the reasons just discussed, and remembering that "trial courts may not be convicted of error in refusing to give an instruction which is not substantially correct in both form and substance even though giving the instruction would not be reversible error" (Orloff v. Fondaw, Mo.App., 315 S.W.2d 430), we have no hesitancy in holding that the trial court did not err in refusing to give defendant's requested instruction D-B.

Defendant further contends that the trial court erred in admitting evidence of the amount of plaintiff's hospital bill "because there was no evidence that such services were necessary for treatment of injuries sustained in the accident". We are first met by plaintiff's contention that this point should not be considered because of deficiencies in defendant's statement of facts as such statement related to this point. While the statement is properly subject to at least some of the criticisms leveled at it by plaintiffs, we will consider this point on its merits.

Defendant originally objected to the hospital bill on the ground that there was no showing (1) that the services were necessary, or (2) that the amount of the bill was reasonable or (3) that the document in evidence was rendered as a bill as contrasted to a statement of gratuitious service. Defendant now admits there was evidence of reasonableness. She argues in her brief that the hospital bill was not rendered as a bill and that plaintiff had not paid, and

was not obligated to pay, such bill. This is not within the point set forth in defendant's brief and we will not consider this matter. The point as above quoted goes only to the necessity for the treatment rendered to plaintiff at the hospital.

In support of her argument that the hospital services and treatment were not necessary, defendant cites Markovich v. Kansas City Public Service Co., Mo., 266 S.W.2d 641. In that case the actual issue involved the reasonableness of the charge and not the necessity for the service. However, the court did mention both reasonableness and necessity in the same sentence and pointed out that the nature and extent of plaintiff's injuries was evidence of the reasonableness of the cost of medical services. This same reasoning would no doubt apply to the necessity for the services. See also Siemes v. Englehart, Mo.App., 346 S.W.2d 560, where the court held that a finding that the medical services there in question were necessary would be justified from the fact that the doctor examined and treated plaintiff for complaints resulting from the accident; and Myers v. Karchmer, Mo., 313 S.W.2d 697, where the court pointed out that evidence of plaintiff's physical condition was sufficient to form a basis for a jury determination of the necessity of medical treatment in the future. In the early case of Fleming v. Kansas City Suburban Belt Ry. Co., 89 Mo.App. 129, the court held that medical services which were rendered in an attempt to cure the plaintiff's ills resulting from the accident were reasonably necessary.

In the case at bar, plaintiff suffered a fractured pelvis and perhaps some aggravation of an arthritic condition. He was first hospitalized in Moberly, Missouri, and was then sent to the Wabash Employee's Hospital at Decatur, Illinois. From his own testimony and from the medical evidence adduced it appears that he received protracted treatment for this fractured pelvis; that he was in this hospital for 52 days; that his recovery was long and painful and that he experienced great difficulty in regaining his ability to walk. Under these circumstances it is apparent that medical and hospital services and treatment were reasonably necessary to alleviate the condition caused by the vehicle collision in question. Plaintiff's evidence does not cast doubt on the necessity for these services. Defendant contends that plaintiff was examined *for* "some old and unrelated condition". The evidence shows that the X-ray examination which would be reasonably necessary for one in plaintiff's condition, incidentally revealed the old fracture of a vertebra in the region of the neck. Defendant contends that plaintiff received two drugs for "blood pressure and allergies", which were not connected with the accident. The doctor's testimony was that one drug was useful to rid the body of excess water and *secondarily* to lower the blood pressure. The doctor also testified that the other drug was used for allergies and as a sedative. It was in evidence that plaintiff had a tendency toward high blood pressure. Even if the secondary effect of the first drug (to lower blood pressure) were the sole reason why this drug was administered, it would not be used for treatment unrelated to the conditions caused by the accident. It is apparent that it would be necessary to control a patient's blood pressure within reasonable limits while he is hospitalized as a result of an accident. Likewise, it does not take a medical expert to realize that it is necessary to control body fluids of a patient who is confined to bed for a long period of time. As to the second drug, the use of sedatives is undoubtedly a proper treatment for one in plaintiff's condition, and the mere fact that the sedative given might also be useful in connection with allergies does not change this situation. It is significant that although defendant, both in oral argument and in her brief, emphasizes the use of these two drugs, she did not mention them in her cross-examination of the doctor, although she did go into various other details of the hospital record in such cross-examination. We, therefore, conclude that plaintiff's evidence amply

showed the reasonable necessity for the medical and hospital treatment and services rendered to plaintiff at the Decatur Hospital and that defendant's complaints in point five of her brief are without substance.

In point six defendant complains of the trial court's refusal to give defendant's instruction D-A, which would have withdrawn from the jury's consideration the evidence of the amount of this hospital bill. What we have just said disposes of this contention adversely to the defendant.

Finding no error in the trial of this case, the judgment is affirmed.

All concur.