**Michael R. COX, Plaintiff-Appellant,**

v.

**Ada H. MILLER, Defendant-Respondent.**

**No. 9885.**

Missouri Court of Appeals, Springfield District.

Oct. 14, 1975.

Rehearing Denied Nov. 4, 1975.

A. L. Shortridge, Joplin, for plaintiff-appellant.

L. R. Buehner, Buehner & Buehner, Joplin, for defendant-respondent.

Before STONE, P. J., and HOGAN and TITUS, JJ.

TITUS, Judge.

Prompted by defendant's motion for directed verdict at the close of plaintiff's evidence, the trial court opined plaintiff had not maintained a careful and vigilant lookout and was, therefore, guilty of negligence as a matter of law which contributed to cause the two-car-intersectional accident in question. Judgment was entered accordingly and plaintiff has appealed contending the question of his negligence vel non should have been submitted to the jury for decision.

North-south Main Street in Joplin consists of four traffic lanes (each 12 feet wide) and two curb-adjacent parking lanes (each 6 feet wide); two of the traffic lanes are for southbound traffic; the other two are for northbound traffic. East-west 17th Street accommodates two traffic lanes intended for single lines of vehicles traveling east and west upon the thoroughfare. The accident occurred during daylight on dry pavement. Electric signals which ordinarily controlled traffic at the intersection were hors de combat due to a tornado which struck the city earlier in the day. Plaintiff was southbound on Main Street. Defendant was traveling west on 17th Street and crossing Main Street when the casualty transpired.

Before the accident plaintiff had stopped at the east edge of 16th and Main Streets (one block north of the collision site), and had then driven west onto Main Street, turning left or south into the west or outside traffic lane some 10–12 feet to the rear and right of a National Guard Jeep which was traveling south in the east or inside traffic lane at a speed, according to plaintiff, of 10–15 miles per hour. Plaintiff's "highest" speed, by his testimony, was "about 20, 25 miles an hour," and he was slowly overtaking the Jeep. When the Jeep got to the north side of the intersection at 17th and Main Streets, it was stopped and plaintiff's car (by his testimony) was then "3 or 4 feet, maybe 5 feet" behind the Jeep. Plaintiff thought the Jeep was halted so its driver could turn left. Plaintiff drove past the stopped Jeep "doing about 20 miles an hour," and when the front of his car was some 2 to 5 feet south of the pedestrian lane which crossed the north side of the intersection, the "right side of the front end" of plaintiff's car struck the "back end" of the right rear fender of defendant's automobile when it "was almost out of the intersection." Plaintiff did not see defendant's automobile "until it got up in front of me" or "until I hit her." Plaintiff "tried to apply my brakes, but I didn't have time for them to catch hold." The speed of defend-

ant's automobile was unknown to plaintiff, and when asked what prevented him from seeing defendant's vehicle sooner than he did, plaintiff replied: "The Jeep in the inside lane. I couldn't see anything."

Occupants of the Jeep first observed defendant's westbound automobile as it was entering onto Main Street from the east side of the intersection. The Jeep driver said he was traveling 20–25 miles per hour as he proceeded south on Main Street and that when he first espied plaintiff's car it "was to our right and a little to the rear of our Jeep . . . . The front of the [plaintiff's] car was somewhere between the rear bumper of the Jeep and the passenger seat." The Jeep driver remembered on direct examination he had made a "sudden stop" at the north edge of the intersection "[b]ecause [defendant's] car was going across the intersection;" on cross-examination, he agreed that two or three days before trial he had told defendant's counsel that as he came up to the intersection he might have stopped once, started forward and had to stop again. The Jeep passenger did not observe plaintiff's car before the collision and testified the Jeep was traveling 15 miles per hour as it neared the intersection. He testified that after defendant's automobile had entered the intersection at an unstated speed and was "about even with the left front of our Jeep," it "kinda paused" to 5–10 miles per hour "and then went on through the traffic . . . gave it more gas to get on by." The passenger also stated that the Jeep driver made an emergency type stop to avoid hitting or being hit by defendant's automobile.

Conspicuous by its absence was evidence as to the distances the Jeep and plaintiff's car were north of the intersection as defendant entered onto Main Street, "kinda paused" in the intersection, and "gave it more gas to get on by," or the distance those vehicles were north of the intersection when the Jeep driver first saw plaintiff's car or when the brakes on the Jeep were applied. Likewise, except at the time defendant "kinda paused," the record is mute as to defendant's speed as she was traversing Main Street. Also, no witness was able to state with certainty whether there was or was not any northbound traffic traveling north of the intersection which alone or in combination with the presence of the Jeep, could or would have prevented plaintiff, wherever he may have been at the time, from seeing defendant's automobile before he did. There was no suggestion that the speed at which plaintiff was driving was in excess of the lawful speed for vehicles traveling on Main Street.

In deciding whether plaintiff was guilty of contributory negligence as a matter of law, plaintiff's evidence must be accepted as being true and he must be afforded the benefit of all favorable inferences arising therefrom. If reasonable men would honestly differ upon the issue of whether plaintiff used and exercised the highest degree of care in the operation of the car he was driving on the occasion involved, that issue should have been determined by the jury, not by the trial court. *Davenport v. Wabash Railroad Company,* 435 S.W.2d 641, 646[5] (Mo. banc 1968); *Willis v. Wabash Railroad Company,* 377 S.W.2d 489, 492[1, 2] (Mo.App.1964).

As plaintiff approached the intersection, he was duty bound to keep a careful lookout. He was required to look ahead, to his right, to his left, and in some cases also behind. But he could not look in one direction all the time. Neither was he required to keep his head in a constant motion from side to side. *Norris v. Winkler,* 402 S.W.2d 24, 27[3] (Mo.App.1966). And although plaintiff was charged with seeing that which could have been seen, the law does not require the impossible nor hold one guilty of contributory negligence because of his inability to see through impenetrable objects or bend his vision around them. If plaintiff could not see defendant's automobile, he is not to be charged with negligence in not seeing it. *Johnson v. Bush,* 418 S.W.2d 601, 604[1] (Mo.App.1967); *Fuzzell*

*v. Williams,* 288 S.W.2d 372, 376[9–11] (Mo. App.1956).

■ When two vehicles traveling in the same direction in parallel traffic lanes are in such a position that the lateral view of one of the drivers is obstructed by the other car, we know of no law which requires the motorist whose view is obstructed to stop, accelerate or decelerate the speed of the vehicle he is operating to obtain an unobstructed lateral view. Such a requirement would create more problems than it would solve; it would seriously disrupt the normal flow of traffic and interfere with the purpose and usefulness of multiple traffic lanes. Cf. *Collier v. St. Louis Public Service Company,* 298 S.W.2d 455, 460 (Mo.App.1957); *Nightingale v. Birnbaum,* 11 Cal.App.2d 34, 52 P.2d 955–956 (1935). Evidence as to the position of plaintiff's car in the outside lane in relation to that of the Jeep in the inside lane as the two vehicles neared the intersection, permits an inference that the defendant's automobile was not plainly visible to plaintiff as his lateral view to the left was blocked by the Jeep [cf. *Hammon v. Gentemann,* 423 S.W.2d 5, 7 (Mo.App.1967)], and as we must accept plaintiff's testimony as being true for the purpose of our present task [*Zumault v. Wabash Railroad Company,* 302 S.W.2d 861, 863[3] (Mo.1957)], we are bound by plaintiff's unobjected-to testimony that he could not see defendant's automobile until it got in front of him or until the moment of impact because of "[t]he Jeep in the inside lane." Considering this in combination with the following, it is our opinion that reasonable minds could honestly differ as to whether plaintiff exercised the required degree of care. Plaintiff was driving on what could be inferred to be a principal thoroughfare of the city. He was proceeding in a proper lane at a rate not contended to be in excess of any lawful speed limit, and at a rate similar to that of the Jeep whose driver had an unobstructed view to the left. The Jeep, traveling somewhat laterally to plaintiff's car, drove steadily toward the intersection until it came to a stop. As the Jeep was in the inside lane and was stopped with its front end "in the intersection," plaintiff could assume, as he said he did and sans other circumstances, that the Jeep had stopped to facilitate a left turn rather than to give way to an unseen vehicle traversing Main Street. Because he observed the Jeep and its movements, the presence of cars parked along the west curbing and eventually saw defendant's automobile "in front of me," it is reasonable to infer that plaintiff was looking ahead and also to his right and left as he drove along Main Street albeit the Jeep interfered with his left lateral vision. By the time defendant's automobile came into plaintiff's view, plaintiff's car was so close to the intersection there was then not sufficient time and distance for him to take effective action to avoid the collision. *Shelton v. Bruner,* 449 S.W.2d 673, 679[3] (Mo. App.1969). On this record we cannot say that plaintiff was guilty of contributory negligence as a matter of law for failure to keep a proper lookout.

■ Defendant urges that in the event we should conclude the court nisi erred in directing the verdict on the issue of lookout, the judgment should nevertheless be sustained if the direction was proper for any other reason. To this point defendant cites *Stewart v. Zuellig,* 336 S.W.2d 399, 402[1] (Mo.1960); *Silvey v. Missouri Pacific Railroad Company,* 445 S.W.2d 354, 361[7] (Mo. 1969); *Anderson v. Dyer,* 456 S.W.2d 808, 814[8] (Mo.App.1970); and *Dill v. Poindexter Tile Company,* 451 S.W.2d 365, 370[5] (Mo.App.1970). Only *Stewart* is properly cited for this general proposition in the posture of this case; no other authorities have been provided us by defendant to support her allegation that plaintiff did not make a submissible case or was contributorily negligent for reasons not specified by the trial court. Defendant's urging, without citation of authority to substantiate any unannounced reason for the trial court's action, is tantamount to a suggestion that we search the record and cull the authori-

ties to find some basis for concluding the trial court reached a correct result although its declared reason was erroneous. It is not our duty to become an advocate for defendant and we decline the invitation that we should. *State ex rel. Mayfield v. City of Joplin,* 485 S.W.2d 473, 476[10] (Mo.App. 1972).

The judgment is reversed and the cause is remanded for a new trial.

All concur.