Paul HOLTMEYER, Plaintiff-Respondent,

v.

Joseph Lee SCHERER,
Defendant-Appellant.

No. 37501.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Dec. 28, 1976.

**30**

Kortenhof & Ely, Ben Ely, Jr., St. Louis, for defendant-appellant.

Hansen, Stierberger & Hartley, E. A. Stierberger, Union, for plaintiff-respondent.

GUNN, Judge.

Plaintiff's motorcycle and an automobile operated by defendant collided at an uncontrolled intersection in Washington, Missouri. Plaintiff brought suit and the jury awarded him $35,142.50 for personal injuries and property damage. On appeal, defendant raises the following points: 1) that plaintiff was contributorily negligent as a matter of law; 2) that it was error to permit a police officer to testify that the street on which plaintiff was traveling was a major thoroughfare; 3) that the trial court erroneously permitted expert witness testimony as to the location of the vehicles at the point of impact; 4) that the trial court erroneously permitted expert witness testimony regarding the speed of the vehicles at the time of impact; 5) that it was error to include in plaintiff's verdict director a submission that defendant was driving on the wrong side of the road; 6) that the trial court erred in failing to completely define "right of way" as it related to an uncontrolled intersection. We find that the admission of expert witness testimony regarding the point of impact of the vehicles to be prejudicially erroneous and therefore reverse and remand.

The accident occurred on a summer evening while still daylight and took place at the uncontrolled intersection of Third and Boone Streets in Washington. Plaintiff was traveling on his motorcycle east on Third Street, and defendant was driving an automobile south on Boone Street. Plaintiff's motorcycle was struck on the left side in the southeast quadrant of the intersection, and plaintiff and his wife,[1] who was riding with him as a passenger, were thrown from the motorcycle. Debris from the accident and some gouge marks made by the motorcycle at the time of the collision were found in the intersection.

Plaintiff was rendered unconscious by the accident and had no recollection of what occurred, but two witnesses testified on his behalf. Marie Rogles observed the accident from her front porch, 50–70 feet away. She testified that plaintiff's motorcycle was moving at a speed of approximately 20 m. p. h. when it entered the intersection; that shortly before entering the intersection (about 50–70 feet away), plaintiff looked to his left into Boone Street, and at the point where plaintiff looked left, a person could see approximately 25 feet into Boone (toward the direction from which defendant was entering the intersection). An embankment and tree obstructed further view into Boone. Mrs. Rogles did not see plaintiff look to his left again and noted that he did not decrease his speed of approach into the intersection nor swerve or sound his horn. At the time plaintiff was struck by defendant's auto, he was more than halfway across the Boone Street intersection.

Plaintiff's wife testified that she was a passenger on the motorcycle driven by plaintiff; that she could not recall whether plaintiff looked to his left before entering the intersection but that he did not slow, swerve or brake once into the intersection. She also testified that the embankment and tree obstructed the view to the left into Boone and that it was possible to see a distance of approximately one car length into Boone before reaching the intersection. Plaintiff's wife further testified that the defendant's vehicle was moving more rapidly than the motorcycle; that she did not observe the defendant brake, swerve or sound a warning; and that the motorcycle had entered the intersection before defendant.

Defendant testified that as he approached the Third Street intersection on Boone Street he reduced his speed from 25 m. p. h. to 20 m. p. h. Defendant's automobile was five feet from the intersection when the defendant first saw the motorcycle, and he estimated the distance of the motorcycle to be 15–20 feet from the intersection. The defendant also testified that he had attempted to apply his brakes.

---

1. At the time of the accident, plaintiff was not married to his passenger, but they were married prior to trial.

■ Defendant first asserts that the trial court erred in failing to find the plaintiff contributorily negligent as a matter of law, as the evidence demonstrated that plaintiff failed to keep a careful lookout as he entered the intersection.[2] In determining whether plaintiff was contributorily negligent as a matter of law, "plaintiff's evidence must be accepted as being true and he must be afforded the benefit of all favorable inferences arising therefrom. If reasonable men would honestly differ upon the issue of whether plaintiff used and exercised the highest degree of care in the operation of the car [vehicle] he was driving on the occasion involved, that issue should have been determined by the jury, not by the trial court." *Cox v. Miller,* 529 S.W.2d 196, 198 (Mo.App.1975). It is primordial legal rubric that the issue of contributory negligence is generally for jury determination, *Ogden v. Toth,* 542 S.W.2d 17 (Mo.App. 1976), and that the burden of proving plaintiff's negligence, rests with the defendant. *Clark v. McCloskey,* 531 S.W.2d 36 (Mo.App. 1975). Furthermore, "[w]hat constitutes negligence in failing to keep a lookout in a particular direction at any certain place or time depends upon the then existing circumstances and conditions and is usually a jury question." *Clark v. McCloskey, Id.,* at 37.

Defendant relies on the testimony of plaintiff's witnesses for the purpose of showing that plaintiff was contributorily negligent in failing to maintain a lookout as he approached the Third Street-Boone intersection. Mrs. Rogles testified that when the plaintiff was 50–70 feet from the intersection, he looked to his left into Boone Street (the direction from which defendant was approaching) and then proceeded into the intersection without looking to his left a second time. But we also note that the impact of Mrs. Rogles' testimony in favor of defendant that plaintiff did not look to his left a second time is enervated by her further testimony that it was "[n]ot to my

knowledge" that he looked back a second time—scarcely a conclusive affirmation that the second look was not made. And plaintiff's wife's testimony is not helpful to defendant, for she simply did not remember whether plaintiff looked to the left. While defendant argues that plaintiff's failure to look to his left into Boone a second time was contributory negligence as a matter of law, based on the evidence, we disagree. Due to the view obstruction, plaintiff would be able to see only approximately one car length, or, at the most, 25 feet looking left into Boone immediately prior to entering the intersection. Therefore, when plaintiff first looked to his left toward Boone approximately 50–70 feet from, the intersection, he would not have been able to see the defendant.

■ It is certainly true that a motorist entering an intersection has a duty to keep a careful lookout ahead and laterally. *Schmittzehe v. City of Cape Girardeau,* 327 S.W.2d 918 (Mo.1959); *Knight v. Richey,* 363 Mo. 293, 250 S.W.2d 972 (1952); *Cox v. Miller,* supra. Courts have frequently noted that in exercising this duty, a motorist cannot be required to look in one direction all the time, or keep his head in constant motion. *Schmittzehe v. City of Cape Giraudeau,* supra; *Knight v. Richey,* supra; *Cox v. Miller,* supra; *Johnson v. Bush,* 418 S.W.2d 601 (Mo.App.1967); *Bischoff v. Dodson,* 405 S.W.2d 514 (Mo.App.1966); *Norris v. Winkler,* 402 S.W.2d 24 (Mo.App.1966). Although a plaintiff is charged with seeing that which could have been seen, "the law does not require the impossible nor hold one guilty of contributory negligence because of his inability to see through impenetrable objects or bend his vision around them. If plaintiff could not see defendant's automobile, he is not to be charged with negligence in not seeing it." *Cox v. Miller,* supra at 198. See also *Fuzzell v. Williams,* 288 S.W.2d 372 (Mo.App.1956). The record here is lacking any precise or specific evidence to

---

2. Defendant initially contended that the issue of plaintiff's negligence was established in a suit brought by plaintiff's wife (prior, of course, to the marriage) against plaintiff and defendant

where plaintiff was held to have been negligent. Defendant abandoned this position in view of *Lee v. Knight,* 538 S.W.2d 345 (Mo. App.1976).

establish the point at which defendant's auto would have been visible to plaintiff. The best that can be said is that plaintiff would have had to have been "pretty close" to the intersection before he could see defendant. And although there is some evidence that plaintiff may not have looked to his left when he was "pretty close" to the intersection, we cannot say that his failure to do so rendered him guilty of contributory negligence as a matter of law. For even if the plaintiff had looked to his left in time to have seen defendant's auto, there is no evidence to suggest that having seen defendant's auto, plaintiff could have done something to avoid the accident. Thus, defendant has failed to establish a causal connection by the plaintiff's failure to look and the ensuing accident. Such showing is necessary before we can find plaintiff contributorily negligent as a matter of law. *Norris v. Winkler,* supra; *Fuzzell v. Williams,* supra.

■ Also, by being to the right of the defendant as the vehicles entered the intersection simultaneously,[3] plaintiff possessed the right of way pursuant to § 304.-351(2) RSMo 1969. The following statement from *Knight v. Richey,* supra at 975–76 is thus felicitous:

"There was evidence tending to show that plaintiff and defendant reached the intersection at approximately the same time, and there was evidence tending to show that plaintiff reached and moved into the intersection when defendant was yet some distance to the eastward. Although in the exercise of care plaintiff must have seen and become aware of defendant's approach even though the view to plaintiff's left was somewhat obstructed, we believe it should not be said as a matter of law that, in the circumstances of the collision including the circumstance of plaintiff's favored position as a traveler approaching from defendant's right, plaintiff was not justified in

assuming that defendant would manage or regulate the speed and progress of her automobile so that plaintiff could pass safely over the intersection."

See also *Norris v. Winkler,* supra. We therefore conclude that the question of plaintiff's contributory negligence was properly one for the jury and not for the trial court.

■ Defendant next contends that it was error to allow a police officer to testify that the street on which plaintiff was driving—Boone Street—was a major thoroughfare.[4] Although no witness indicated that traffic on Third Street possessed an automatic right of way over traffic on Boone, any such possible inference was dispelled by Instruction No. 7. Instruction No. 7 set forth the proper rule regarding intersection right of way and was clear in establishing that plaintiff did not have the automatic right of way by the mere fact he was traveling on Third Street. Any error regarding the testimony as to Third Street being classified as a major thoroughfare was rendered harmless by the instruction. See *Kanter v. Kansas City, Missouri,* 336 S.W.2d 387 (Mo.1960); Rule 84.13(b). See also *Meade v. Kansas City Public Service Co.,* Mo., 250 S.W.2d 513 (1952). But inasmuch as we are remanding this case for other reason, we suggest that plaintiff eschew comment as to whether Third Street is considered a major thoroughfare.

Defendant next contends that it was error to permit plaintiff's expert witness to testify that defendant's auto was driving on the wrong side of the road at point of impact; that such testimony invaded the province of the jury. Defendant's contention in this regard is well taken. The expert witness gave testimony as to the location and position of the vehicles at the time and point of impact based on where the wreckage debris and gouge marks made by the motorcycle in the intersection were found. *Housman v. Fiddyment,* 421 S.W.2d

---

3. There is some evidence that would support a finding that plaintiff entered the intersection before defendant.

4. Third Street was 42 feet wide and Boone was 34 feet wide.

284 (Mo. banc 1967), is directly in point on this issue. In *Housman,* the trial court permitted an expert witness to testify as to the location of the point of impact and the position of the defendant's vehicle at the time of impact. In the expert's opinion, the defendant's station wagon was on the wrong side of the road. In discussing this issue, the Supreme Court first stated the rule concerning the use of expert testimony:

> "When jurors, for want of experience or knowledge of the subject under inquiry, are incapable of reaching an intelligent opinion without outside aid the courts out of necessity admit the testimony of experts in the field. Allowing an expert to give an opinion upon a subject of inquiry, instead of requiring that the witness give only *facts,* is an exception to the general rule that witnesses must state facts." *Housman v. Fiddyment,* supra at 289. (original emphasis)

The court went on to state the standard of review on appeal of a trial court's ruling concerning the admissibility of expert testimony: "The determination of the question of necessity rests in the first instance in the sound discretion of the trial judge and his discretion in this respect will not be set aside in the absence of a showing of an abuse of discretion." *Id.,* at 289. Citing a long line of cases, the court reiterated the rule that opinion testimony concerning the position of the defendant's vehicle is incompetent and inadmissible. *Id.,* at 290. The court then stated that the trial court abused its discretion in admitting the expert's testimony concerning the position of the defendant's vehicle and the point of impact because "[t]hese subjects do not involve an application of the principles of physics, engineering, mechanics or other technical fields of science requiring specialized information. These questions could be determined by jurors possessed of the knowledge of ordinary men of the time. Automobile collision cases involving these subjects of inquiry are routinely decided by Missouri juries without the aid of expert witnesses." *Id.,* at 291–92. *Butler v. Crowe,* 540 S.W.2d 940, 942 (Mo.App.1976), also observes that "[t]he admission of an opinion on the relative location of vehicles at impact . . . is generally erroneous."

 Plaintiff relies on *Yocum v. Kansas City Public Service Co.,* 349 S.W.2d 860 (Mo.1961), to support the trial court's action. But *Yocum* is readily distinguishable from this case and was distinguished in *Housman v. Fiddyment,* supra at 291, for the reason that in *Yocum* the expert's opinion involved technical information not possessed by the ordinary juror. In the case before us, the expert witness did not rely on technical calculations to arrive at his opinion. Rather, as in the case of *Housman v. Fiddyment,* supra, the expert based his opinion on the location of debris and gouge marks, photographs and the damage to the two vehicles. All this evidence was before the jury which possessed the knowledge necessary to accurately place the vehicles prior to the accident. Based on the rationale of *Housman v. Fiddyment,* supra, we must reverse and remand this case.

 Defendant also attacks plaintiff's expert witness' testimony that defendant's auto was driving at a greater rate of speed than plaintiff's motorcycle. Defendant argues that there was no foundation for such an opinion. However, plaintiff's expert did articulate a theory of velocity of momentum of the vehicles related to the location of the gouge marks in the pavement caused by the motorcycle and as to the direction which the vehicles were traveling. Such theory allowed a conclusion that defendant's auto was moving faster than the motorcycle at the time of the collision. The expert's opinion as to speed was based on adequate facts and data and was not conjectural. Similar matters have been held to be the proper subject of expert testimony. *Jones v. Smith,* 372 S.W.2d 71 (Mo.1963).[5]

5. Even if a proper foundation had not been laid by the plaintiff, it is manifest that any error would have been harmless, as the plaintiff decided not to submit excessive speed to the jury as a theory of defendant's negligence. "[W]here evidence has been improperly admit-

■ The defendant asserts that error was committed in submitting a portion of the plaintiff's verdict directing instruction. The instruction reads as follows:

"Your verdict must be for plaintiff if you believe:

First, defendant either:

 failed to keep a careful lookout, or drove on the wrong side of the road, or failed to yield the right of way, and

Second, the defendant's conduct, in any one or more of the respects submitted in paragraph First, was negligent, and

Third, as a direct result of such negligence, plaintiff sustained damage,

Unless you believe plaintiff is not entitled to recover by reason of Instruction No. 5."

The defendant submits that the submission of driving on the wrong side of the road did not follow the prescribed MAI form as revised in 1973. While this contention is not properly preserved for appeal,[6] on retrial, the plaintiff should follow MAI 17.13 as revised if he chooses to submit a wrong side of the road theory to the jury.

■ The defendant also claims that the trial court improperly included a wrong side of the road submission in that there was no showing that this negligent act could have been a proximate cause of the accident. Defendant cites no authority to support his position and thereby fails to comply with Rule 84.04(d). As the defendant's point stands naked of any citation of authority, it is deemed abandoned. *Cox v. Lee,* 530 S.W.2d 273 (Mo.App.1975). Further, as we are remanding this case due to the inadmissibility of plaintiff's expert witness' testimony which placed defendant's auto on the wrong side of the road, we do not reach the merits of this point; it is not likely to arise in a new trial.[7]

■ Defendant's final point is that the trial court erred in failing to fully instruct the jury on the meaning of "right of way" as used in the plaintiff's verdict directing instruction. The court read and submitted to the jury MAI 14.03:

"The phrase 'right of way,' as used in these instructions, means the right of one vehicle to proceed ahead of the other.

When two vehicles reach an intersection at approximately the same time, the vehicle on the right has the right of way."

The court failed to add to the last sentence the phrase "provided a very careful person would so proceed under the same or similar circumstances" which appears in brackets at the end of MAI 14.03. The Notes on Use following MAI 14.03 state that the bracketed clause "must be added where there is evidence that the party entitled to the right of way failed to use such care." The defendant claims that the evidence produced at trial demonstrated that the plaintiff failed to exercise due care when entering the intersection and, therefore, the clause should have been included in the instruction. Although we hold that the plaintiff could not be found to be contributorily neg-

---

ted on issues not submitted to the jury for their determination, such improperly admitted evidence does not constitute reversible error." *Wissmann v. Pearline,* 235 Mo.App. 314, 135 S.W.2d 1, 6 (1940).

6. This issue is not properly preserved for appeal since no objection was made to the giving of this instruction at trial, nor was this point included in the defendant's motion for a new trial as required by Rule 78.07. *Price v. Ford Motor Credit Co.,* 530 S.W.2d 249 (Mo.App. 1975).

7. This should not be construed to mean that the plaintiff is barred from submitting his case against the defendant on the theory that the defendant was driving on the wrong side of the road. Based on Mrs. Rogles' testimony placing

the accident in the southeast quadrant of the intersection and on the defendant's equivocal response on cross-examination that he may have been on the wrong side of the road, there was sufficient evidence to place the defendant on the east side of Boone even without plaintiff's expert's testimony. We do note however, that the evidence is vague as to whether the fact that the defendant was on the wrong side of the road was the proximate cause of the accident. As the evidence now stands, it appears that the jury would have had to resort to speculation and conjecture in concluding that had the defendant been on the proper side of Boone, the plaintiff's motorcycle would have cleared his path.

ligent as a matter of law, we believe that there is evidence indicating that the plaintiff may have failed to act as a "very careful person" in proceeding through the intersection. There was evidence to show that the view north onto Boone Street was obstructed until an eastbound motorist on Third Street was nearly in the intersection. It is also possible that a jury could find that the plaintiff failed to look to his left and while proceeding into the blind intersection, he failed to slow, swerve or sound a warning. We believe that based on this evidence, the defendant was entitled to have the bracketed clause included in the instruction defining "right of way." See *Haymes v. Swan,* 413 S.W.2d 319, 324–25 (Mo.App. 1967); *Robinson v. Gerber,* 454 S.W.2d 933 (Mo.App.1970).

The case is reversed and remanded for a new trial.

KELLY, P. J., and SIMEONE, J., concur.